J-S25029-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

IN RE: C.D., A MINOR

APPEAL OF: B.D., NATURAL MOTHER

IN THE SUPERIOR COURT OF
PENNSYLVANIA

No. 2074 WDA 2014

Appeal from the Decree entered December 2, 2014,
in the Court of Common Pleas of Allegheny County, Orphans'
Court, at No: TPR 024-14

BEFORE:  BENDER, P.J.E., STABILE, and PLATT,* JJ.

MEMORANDUM BY STABILE, J.:                          **FILED JUNE 15, 2015**

B.D. (Mother) appeals from the decree entered December 2, 2014, in the Court of Common Pleas of Allegheny County, which involuntarily terminated her parental rights to her minor son, C.D. (Child), born in April of 2006.[1]  We affirm.

Child first entered the care of the Allegheny County Office of Children, Youth and Families (CYF) on April 24, 2012.  Child was placed in care as a result of an incident during which Mother called the police and reported that Child was missing, when in fact Mother had simply failed to pick up Child after school.  Mother was under the influence at the time of this incident. Child was adjudicated dependent on May 15, 2012.  On December 24, 2012, Child was returned to Mother's care, after Mother successfully produced

---

* Retired Senior Judge assigned to the Superior Court.

[1] The parental rights of Child's putative father, R.R., as well as the parental rights of any unknown father that Child may have, were terminated by separate decrees entered that same day.  Neither R.R., nor any other alleged father, is a party to the instant appeal.

three clean urine screens. However, Child was again removed from Mother on April 26, 2013, after Mother was arrested and incarcerated.

On February 10, 2014, CYF filed a petition to involuntarily terminate Mother's parental rights to Child. A termination hearing was held on August 8, 2014, and October 31, 2014. During the hearing, the orphans' court heard the testimony of CYF caseworker, Rhianna Diana; psychologist, Terry O'Hara; Ms. Regina Harris, who transported Child to his visits with Father and supervised the visits; Father; Child's paternal grandmother, C.S.; and Mother. On December 2, 2014, the court entered its decree terminating Mother's rights. Mother timely filed a notice of appeal on December 23, 2014, along with a concise statement of errors complained of on appeal.

Mother now raises the following issue for our review. "Did the [orphans'] court abuse its discretion and/or err as a matter of law in concluding that termination of [Mother's] parental rights would serve the needs and welfare of the child pursuant to 23 Pa.C.S.[A.] §[]2511(b)?" Mother's brief at 5.

We consider Mother's claim mindful of our well-settled standard of review.

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial

court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, which requires a bifurcated analysis.

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

In this case, the trial court terminated Mother's parental rights pursuant to Sections 2511(a)(2), (5), and (b), which provide as follows.

**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

\*\*\*

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child

- 3 -

to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\*\*\*

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

\*\*\*

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), (5), and (b).

Instantly, Mother concedes that CYF presented clear and convincing evidence that her parental rights may be terminated pursuant to Section 2511(a). Mother's brief at 10 ("CYF, the petitioner, did clearly and convincingly establish threshold grounds for termination pursuant to 23

Pa.C.S.[A.] §[]2511(a)(2).").  Thus, we need only consider whether the court abused its discretion by terminating Mother's parental rights pursuant to Section 2511(b).[2]  We have discussed our analysis under Section 2511(b) as follows.

> Section 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child.  As this Court has explained, Section 2511(b) does not explicitly require a bonding analysis and the term 'bond' is not defined in the Adoption Act.  Case law, however, provides that analysis of the emotional bond, if any, between parent and child is a factor to be considered as part of our analysis.  While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.
>
> > [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the

---

[2] Child's guardian *ad litem* (GAL) suggests in her brief that we need not consider Mother's challenge to Section 2511(b) because Mother failed to challenge the orphans' court's conclusion that her parental rights should be terminated under Section 2511(a)(5).  GAL's brief at 10, 14 (citing **In re Matsock**, 611 A.2d 737, 741 (Pa. Super. 1992)).  GAL notes that Section 2511(a)(5) also requires an analysis of the subject child's needs and welfare, and contends that, "[b]ecause CYF proved that termination met [Child's] needs and welfare under Section 2511(a)(5), Mother's argument that there is insufficient evidence to support the [orphans' c]ourt's findings under Section 2511(b) is moot." **Id.** at 14.  We disagree.  The needs and welfare analysis required by Section 2511(a)(5) is distinct and considered separately from the analysis required by Section 2511(b), and we see no basis on which to conclude that failing to challenge one of these sections on appeal would prevent an appellant parent from challenging the other section. **See Matsock**, 611 A.2d at 748 ("Thus, in termination proceedings based on paragraph (a)(5), such as the one here, the needs and welfare of the child must be considered *twice;* once under subsection (a), and if all five requirements of subsection (a) are met, then again under subsection (b).").

> love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa. Super. 2015) (quoting *In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011)) (quotation marks and citations omitted).

In this case, the orphans' court concluded that termination of Mother's parental rights would best serve Child's needs and welfare. The court stated that it considered the nature and the status of the bond between Mother and Child, and the effects of severing that bond. Orphans' Court Opinion, 1/30/15, at 15. The court noted testimony that Child suffers from anxiety and symptoms of depression, and that these issues are directly influenced by Child's experiences with Mother. *Id.* In contrast, the court observed that Child is doing well in foster care. *Id.* at 16. The court also emphasized that Mother has failed to remedy her substance abuse issues. *Id.* at 15.

Mother argues that the court failed to address the impact that terminating her parental rights would have on Child, and instead focused improperly on her failings as a parent. Mother's brief at 9, 13-14. Mother also contends that the court was not permitted to consider Child's preference for residing with his foster mother when rendering its decision. *Id.* at 9, 13.

After a thorough review of the record in this matter, we conclude that the orphans' court did not abuse its discretion by involuntarily terminating

Mother's parental rights to Child. During the termination hearing, caseworker Rhianna Diana testified concerning Mother's lengthy involvement with CYF. Ms. Diana explained that, at the time Child first was placed in care, Mother reported attending Narcotics Anonymous and Alcoholics Anonymous meetings, as well as seeing a therapist for mental health treatment and drug and alcohol treatment. N.T., 8/8/14, at 44. Mother also was in a Suboxone maintenance program "for a period of time." *Id.* at 43. After Child was returned to Mother's care in December of 2012, Mother reported that she was continuing to receive this treatment. *Id.* at 46, 49.

However, Ms. Diana further testified that Mother was detained by police for retail theft on April 19, 2013. *Id.* at 50-51. Ms. Diana spoke to Mother about this incident, and Mother admitted to continued drug use. *Id.* at 51. As noted *supra*, Child was removed from Mother's care a second time on April 26, 2013, after Mother again was arrested. *Id.* at 7, 50. Mother was incarcerated from April 28, 2013, until May 7, 2013. *Id.* at 53. Mother was arrested once again on July 13, 2013, and remained incarcerated until July 26, 2013. *Id.* at 54. Mother's next arrest took place on August 3, 2013. *Id.* In October of 2013, Mother was released to "the Renewal program." *Id.* However, Mother violated her parole and was incarcerated until July 28, 2014. *Id.* at 7, 55. While incarcerated, Mother did not report receiving treatment. *Id.* at 55, 80, 90. Mother did complete a 45-day inpatient program while at Renewal. *Id.* at 56.

Ms. Diana concluded that Mother had not been able to remedy her mental health or drug and alcohol issues by the time the petition to terminate her parental rights was filed. *Id.* at 58. Further, Ms. Diana opined that it would not be possible for Mother to remedy these issues within a reasonable period of time, based on Mother's repeated failures to do so in the past. *Id.* at 61-62. Ms. Diana explained that Child appears to be happy and well-adjusted in his current foster placement. *Id.* at 59. She noted that Child's interactions with his foster family are always positive, and that Child gravitates to his foster mother and looks to her for security. *Id.* at 62-63.

Psychologist, Terry O'Hara, testified that he performed a series of individual and interactional evaluations with Child, Mother, and Child's foster parents, in 2012 and 2014. N.T., 10/31/14, at 6-7. Child indicated during these evaluations that, "for the most part," he was best cared for by his foster mother, and he wanted to continue living with his foster parents. *Id.* at 15, 23, 42. Child further expressed a desire that he have less frequent visits with Mother. *Id.* at 23. Dr. O'Hara agreed that Child suffers from anxiety and symptoms of depression, and that these issues are "directly influenced" by Child's experiences with Mother. *Id.* at 46.

Ultimately, Dr. O'Hara recommended that Child should be adopted. *Id.* at 23. Dr. O'Hara emphasized, *inter alia*, Mother's failure to remedy her mental health and substance abuse issues, as well as her frequent incarcerations. *Id.* at 19-21. Dr. O'Hara stated that there is "some level of

attachment" between Mother and Child. *Id.* at 41. However, he agreed that Child's relationship with Mother is not so significant that termination of Mother's parental rights would be harmful to Child, and opined that the benefits of adoption would outweigh any detriment that Child might suffer.[3] *Id.* at 23-24, 43-44.

Mother testified concerning her efforts at obtaining mental health and substance abuse treatment. Specifically, Mother stated that she attended Narcotics Anonymous (NA) meetings and received dual diagnosis treatment with a therapist for a year prior to her incarceration in April of 2013. *Id.* at 130-31, 137, 146. Mother indicated that, while incarcerated, she participated in the "Thinking for a Change" program, attended NA meetings, received cognitive behavioral therapy and saw a drug and alcohol counselor. *Id.* at 132, 137-38. Mother also attended NA meetings and therapy during her time at Renewal. *Id.* at 134, 138. According to Mother, she continues to attend "Thinking for a Change" once per week, and she also continues to attend NA meetings, goes to therapy, and sees a psychiatrist. *Id.* at 133, 138. Mother testified that she began receiving treatment at Mercy Behavior Health in August of 2014, and that she currently is attending an intensive outpatient program three days a week, after having "stepped down" from partial hospitalization. *Id.* at 135. Mother noted that she is prescribed

---

[3] In a 2014 evaluation, which was entered into evidence at the termination hearing as part of CYF Exhibit 5, Dr. O'Hara reported that Child's foster parents "expressed a desire to adopt [Child]." CYF Exhibit 5, Psychological Evaluation Report (January 2014), at 2.

Suboxone as well. *Id.* at 139. Despite this treatment, Mother admitted that she last used illegal substances in September of 2014, about a month prior to the termination hearing. *Id.* at 149. Mother also conceded that she was arrested for retail theft that same month. *Id.* at 152.

Thus, the testimony presented during Mother's termination hearing supports the trial court's conclusion that it would best serve Child's needs and welfare to terminate Mother's parental rights. Since Child first was placed in care in 2012, Mother has repeatedly been arrested, and has been unable to remedy her drug abuse issues. Moreover, during his evaluations with Dr. O'Hara, Child reported that he is best cared for by his foster mother, and that he wants to continue living with his foster parents. Conversely, Child did not want to see Mother as often. Child's statements support Dr. O'Hara's conclusion that, while Child may have some attachment to Mother, the permanence and stability provided by adoption would outweigh any detriment that Child might suffer by terminating Mother's parental rights. *See C.D.R.*, 111 A.3d at 1220 (concluding that the appellant mother's bond with C.D.R was outweighed by the mother's "repeated failure to remedy her parental incapacity," and by C.D.R.'s need for permanence and stability).

Further, we reject Mother's claim that the orphans' court failed to consider the impact that the termination of her parental rights would have on Child, and instead focused improperly on her failings as a parent. The

- 10 -

court indicated that it considered the nature and the status of the bond between Mother and Child, and the effects of severing that bond, and thoroughly summarized evidence relevant to this issue in the "History" portion of its opinion. Orphans' Court Opinion, 1/30/15, at 6-7, 9, 15. Admittedly, Mother is correct that "[t]he focus in terminating parental rights under [S]ection 2511(a) is on the parent, but the focus turns to the children under [S]ection 2511(b)." *In re M.T.*, 101 A.3d 1163, 1181 (Pa. Super. 2014) (*en banc*) (citing *In re Adoption of C.L.G.,* 956 A.2d 999, 1008 (Pa. Super. 2008) (*en banc*)). However, it is clear that Mother's frequent incarcerations and inability to remedy her drug abuse are relevant considerations in determining whether termination will serve Child's needs and welfare*. See, e.g., M.T.*, 101 A.3d at 1182 (quoting favorably from a trial court opinion addressing the parents' "inability to consistently provide a safe and secure environment for their children" as part of its Section 2511(b) analysis). No relief is due.

Finally, we note that Mother's argument that the orphans' court was not permitted to consider Child's preference for living with his foster parents also does not entitle her to relief. In support of this position, Mother cites to *In re B.L.L.*, 787 A.2d 1007 (Pa. Super. 2001). In *B.L.L.*, a panel of this Court rejected an appellant parent's argument in an involuntary termination case that the trial court erred by refusing to schedule an additional hearing in order to allow B.L.L. to testify. *Id.* at 1011. The Court then went on to

- 11 -

discuss this issue further by summarizing some of the differences between custody, involuntary termination, and adoption proceedings. *Id.* at 1012-16. The Court observed that, while a child's preference as to where he or she wants to live is a relevant consideration in custody and adoption proceedings, "the preference of a child . . . and his rights to be heard on the record, is not relevant to termination proceedings, as the child is not electing a choice between two otherwise fit parents with whom he will be able to be placed." *Id.*; *see also id.* at 1014 ("The testimony or preferences of the child(ren) is not required or permitted in an involuntary proceeding as the child cannot cede his right to minimal proper nurturing.").

While it is true that a child's preference is not an independently relevant or permissible factor in termination proceedings, we disagree with Mother's contention that the preference of a child can never be considered by a trial court, as a child's preference can provide valuable insight into other important aspects of a case. Here, Child's preference for living with his foster mother is evidence of (1) Child's bond with his foster mother, (2) Child's lack of a crucial bond with Mother, and (3) the fact that Child will not suffer a serious detriment if Mother's parental rights are terminated. All of these are relevant, and necessary, considerations in the instant matter.

Accordingly, because we conclude that the orphans' court did not abuse its discretion by terminating involuntarily Mother's parental rights to Child, we affirm the decree of the orphans' court.

Decree affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/15/2015