J-S79018-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: D.R.N.L., JR., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: D.L., FATHER | |
| | No. 2333 EDA 2017 |

Appeal from the Order Entered July 14, 2017
In the Court of Common Pleas of Philadelphia County Family Court at
No(s):  CP-51-AP-0000945-2016

BEFORE:  GANTMAN, P.J., LAZARUS, J., and OTT, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED JANUARY 04, 2018**

D.L. ("Father") appeals from the order, entered in the Court of Common Pleas of Philadelphia County, terminating his parental rights to his minor child, D.R.N.L, Jr. ("Child") (born 9/14), pursuant to 23 Pa.C.S. §§ 2511(a)(1), (2) and (b).  After our review, we affirm.[1]

The trial court summarized the facts and procedural history as follows:

On September 18, 2014, the Department of Human Services ("DHS") received a General Protective Services ("GPS") report alleged that Child's mother ("Mother") tested positive for marijuana at Child's birth.  The GPS report stated that mother admitted that she ate three "weed brownies" for nausea and lack of appetite and that she received limited prenatal care. Thereafter, DHS determined that Father and Mother did not co[habitate] and that Father resided with his roommate in a supervised independent living apartment through Valley Youth House.  On September 19, 2014, DHS inspected Father's apartment and determined that the apartment had operable utilities and

---

[1] Mother's parental rights were previously terminated.  **See** N.T. Termination Hearing, 7/14/17, at 55-56.  She is not a party to this appeal.

appropriate sleeping arrangements but that there were rodent droppings on the kitchen counter and the kitchen sink was clogged and filled with dirty dishes. Additionally, DHS was unable to approve Father's apartment because Father's roommate was determined to be the perpetrator in a Child Protective Services ("CPS") report for the sexual abuse of a three year old child. . . . On September 20, 2017, DHS determined that the home where Mother intended to stay with Child was not appropriate due to limited space. On September 22, 2014, Child was discharged from the hospital to DHS' care. DHS obtained an Order for Protective Custody ("OPC") to ensure Child's safety and place him in foster care through Asociacion Puertoriquenos en Marcha ("APM"). At the shelter care hearing held on September 24, 2014, the OPC was lifted and the temporary commitment to the DHS was ordered to stand. At the adjudicatory hearing on October 3, 2014, before the Honorable Jonathan Irvine, the [c]ourt discharged the temporary commitment and adjudicated the Child dependent and referred Father and Mother to the Achieving Reunification Center ("ARC") program. DHS held routine Family Service Plan ("FSP") meetings for Father and Mother throughout this case. The FSP objectives for the parents were for them to[:] (1) maintain sobriety and to successfully complete drug and alcohol treatment; (2) to provide consistent negative random drug screens; (3) to successfully complete mental health treatment; (4) to successfully complete a parenting program; (5) to obtain housing and (6) to visit the Child. On December 15, 2015, Father tested positive for benzodiazepine at very high levels at Family Court. On March 15, 2016, Father tested positive for benzodiazepine at Family Court. On May 24, 2016, Father tested positive for benzodiazepine and marijuana at Family Court. Father was scheduled for an intake appointment at Net-West on June 6, 2016. Father did not attend. Father was never able to secure housing.

Trial Court Opinion, 9/6/17, at 2-4.

On October 11, 2016, DHS filed a petition to involuntarily terminate Father's parental rights to Child. The court held a hearing on July 14, 2017 and heard testimony from several witnesses, including Bill Henning, DHS

social worker and case manager, Maureen Pie', Guardian *ad litem* ("GAL"),[2] Andre Briggs, CUA case manager, and Father.

At the hearing, it was established that Child had been in placement with, maternal cousin and her husband, a pre-adoptive home in Atlanta, Georgia, for 33 months; all of Child's physical, emotional and developmental needs were being met by the foster parents. N.T. Termination Hearing, 7/14/17, at 21, 50-52. Additionally, DHS established that Father failed to meet his FSP objectives; drugs and alcohol have been a concern for 33 months and Father failed to establish that he has successfully completed the required drug and alcohol and mental health treatment. *Id.* at 15-17, 52. Father completed only one of five drug and alcohol screens, and admitted to prior relapses. *Id.* at 15-16, 28, 46. Further, Father was unable to provide verification as to the condition of his housing and could provide no proof of adequate housing. *Id.* at 17.

The court also heard from the GAL, who testified that "it's just taking too long for dad to get it together." *Id.* at 54. The GAL did note that Father and Child have a good relationship when they are together, however Child "is three years old, and he needs a permanent home immediately." *Id.* She also stated that she was "heartened" by the fact that Child's "current caregiver is open and willing to allow [Father] to continue to visit." *Id.*

---

[2] We note the GAL did not file a brief in this matter.

Father testified that he was currently working as a home health caregiver for his grandmother. *Id*. at 38. He stated that he had been prescribed Xanax, which explained his positive test for benzodiazepines. *Id*. at 38-39. However, Father was unable to produce documentation indicating that he was attending or had completed mental health treatment and/or drug and alcohol treatment. *Id.* at 39-40. Father also testified to his version of the events that led to his arrest following an assault on Mother that left her with two black eyes, stating that it was in fact his ex-girlfriend that had punched Mother, but that Mother said he did it. *Id*. at 44.

At the conclusion of the hearing, the court noted on the record that Child had been in placement since birth, for over two and one-half years, that it did not find Father's testimony credible, and that Father has failed, despite being given every chance, "to rectify the situation and meet his goals." *Id**.* at 55-56. The court also noted that Father failed to establish that he had secured adequate housing, finances or child care arrangements. *Id.* at 57. The court,

therefore, terminated Father's parental rights under sections 2511(a)(1),[3]

(a)(2)[4] and (b).[5]

On appeal, Father raises the following issues:

1. Whether the trial court committed reversible error, when it involuntarily terminated Father's parental rights where such determination was not supported by clear and convincing evidence under the Adoption Act, 23 Pa.C.S.A. §§ 2511(a)(1) and (2)?

2. Whether the trial court erred because the evidence was overwhelming and undisputed that Father demonstrated a genuine interest and sincere, persistent, and unrelenting effort to maintain a parent-child relationship with Child?

3. Whether the trial court committed reversible error when it involuntarily terminated Father's parental rights without giving primary consideration to the effect that the termination would have on the developmental, physical and emotional needs of Child as required by the Adoption Act, 23 Pa.C.S. § 2511(b).

Appellant's Brief, at 8.

_____

[3] "The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties."  23 Pa.C.S. § 2511(a)(1).

[4] "The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent."  23 Pa.C.S. § 2511(a)(2).

[5] "The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent."  23 Pa.C.S. § 2511(b)

In cases involving termination of parental rights, our standard of review is limited to determining "whether the order of the trial court is supported by competent evidence, and whether the trial court gave adequate consideration to the effect of such a decree on the welfare of the child." *In re Z.P.*, 994 A.2d 1108, 1115 (Pa. Super. 2010) (quoting *In re I.J.*, 972 A.2d 5, 8 (Pa. Super. 2009)).

> Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. . . . We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

*In re B.L.W.*, 843 A.2d 380, 383 (Pa. Super. 2004) (en banc).

> Furthermore, we note that the trial court, as the finder of fact, is the sole determiner of the credibility of witnesses and all conflicts in testimony are to be resolved by [the] finder of fact. The burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so. The standard of clear and convincing evidence means testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue. We may uphold a termination decision if any proper basis exists for the result reached. If the court's findings are supported by competent evidence, we must affirm the court's decision, even if the record could support an opposite result.

*In re Z.P.*, *supra* at 1115-16 (internal quotations and citations omitted). If the court finds grounds for termination under the statute have been established by clear and convincing evidence, 23 Pa.C.S. § 2511(a), the court must then consider the developmental, physical and emotional needs and welfare of the child and determine whether severing the parent-child

relationship is in the child's best interests.  ***See*** 23 Pa.C.S. § 2511(b).  ***See also In re: Adoption of T.B.B.***, 835 A.2d 387 (Pa. Super. 2003).

Parental rights may be involuntarily terminated where any one subsection of section 2511(a) is satisfied, along with consideration of the provisions in subsection 2511(b).  ***In re Z.P***., ***supra*** at 1117.  Initially, the focus is on the parent's conduct.  ***In re L.M.***, 923 A.2d 505, 511 (Pa. Super. 2007).  The party seeking termination has the burden of proving by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in section 2511(a).  "Only if the court determines that the parent's conduct warrants termination of his [or her] parental rights does the court engage in the second part of the analysis pursuant to section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child."  ***Id.*** (internal citations omitted).  Further, the statute "outlines certain irreducible minimum requirements of care that parents must provide for their children, and a parent who cannot or will not meet the requirements within a reasonable time following intervention by the state, may properly be considered unfit and have his parental rights terminated."  ***In re B.L.L.***, 787 A.2d 1007, 1013 (Pa. Super.  2001).

After our review of the record, we conclude that there is clear and convincing evidence to support the court's determination that Father has failed to perform parental duties for 33 months, that he is incapable of parenting Child, that Child had been left without proper parental care and control for 33 months, and that Father cannot, or will not, remedy his parental incapacity.

23 Pa.C.S. § 2511(a)(1). Further, DHS presented clear and convincing evidence that Father has failed to demonstrate sufficient progress in remedying the circumstances which led to Child's placement, nor is there any indication that he could remedy such circumstances in the foreseeable future, even with continued services in place. The evidence shows that Father was unwilling to actively and meaningfully participate in the services offered by DHS. 23 Pa.C.S. § 2511(a)(2). We discern no abuse of discretion. *In re Adoption of S.P.*, 47 A.3d at 826-27.

Next, we consider whether the court abused its discretion by terminating Father's parental rights pursuant to section 2511(b). *See In re Adoption of C.L.G.*, 956 A.2d 999, 1009 (Pa. Super. 2008) (en banc). This Court has stated that the focus in terminating parental rights under section 2511(a) is on the parent, but under section 2511(b), our focus is on the child. *Id*. at 1008. In reviewing the evidence in support of termination under section 2511(b), our Supreme Court has stated:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa. Super. 2012). *In In re E.M.*, [620 A.2d 481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791.

*In re: T.S.M.,* 71 A.3d 251, 267 (Pa. 2013). Our Supreme Court has explained that "the mere existence of a bond or attachment of a child to a parent will not necessarily result in the denial of a termination petition." *Id.* at 267. "***Common sense dictates that courts considering termination must also consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents***." *Id.* at 268 (emphasis added). Moreover, in weighing the bond considerations pursuant to section 2511(b), "courts must keep the ticking clock of childhood ever in mind. Children are young for a scant number of years, and we have an obligation to see to their healthy development quickly. When courts fail . . . the result, all too often, is catastrophically maladjusted children." *Id.* at 269.

Here, there was evidence of a developing bond between Father and Child. However, with respect to Child's placement, Henning, the social worker and case manager, testified that foster mother has a "loving, nurturing, maternal bond" with Child, and she provides Child with love, safety, security and support. N.T. 7/14/17, at 6-7. Additionally, Child's foster parents, who are a pre-adoptive resource, have cared for Child all of his life and they provide Child with all of his medical, physical and developmental needs. *Id.* Henning also testified that he saw no harm to Child as a result of termination of Father's parental rights, noting that at the time of the hearing, Father had not seen Child for two months. *Id.* at 22. *See In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010) (in conducting bonding analysis, court is not required to use expert testimony, but may rely on testimony of social workers and

caseworkers). As we stated in *Z.P.*, a child's life "simply cannot be put on hold in the hope that [Father] will summon the ability to handle the responsibilities of parenting." *Id.* at 1125 (citation omitted). Rather, "a parent's basic constitutional right to the custody and rearing of his child is converted, upon the failure to fulfill his or her parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment." *In re B., N.M.*, 856 A.2d 847, 856 (Pa. Super. 2004). The record supports the court's finding that termination would not cause Child irreparable harm and that termination was in Child's best interests. We agree with the trial court's determination that permanency will best serve the developmental, physical and emotional needs and welfare of Child, and that it is in Child's best interest to terminate Father's parental rights. 23 Pa.C.S. § 2511(b).

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/4/2018