**In re In the Interest of B.L.L., Appellee.**

**Appeal of: L.L.S., Natural Mother.**

Superior Court of Pennsylvania.

Argued Oct. 3, 2001.
Filed Dec. 4, 2001.

Karen Hassinger, Washington, for appellant.

Joyce A. Hatfield–Wise, Washington, for Children and Youth Services of Washington County.

BEFORE: DEL SOLE, P.J., LALLY–GREEN and TAMILIA, JJ.

TAMILIA, J.:

¶ 1 L.L.S. (mother) appeals the April 4, 2001 Order terminating her parental rights with respect to her twelve-year-old daughter, B.L.L.[1]

¶ 2 The record reveals that, on September 15, 1997, mother voluntarily placed B.L.L. in the care of Washington County Children and Youth Services (CYS) due to her substance abuse problem and inability to maintain housing. On December 2, 1997, B.L.L. was adjudicated dependent and placed with a foster family. CYS filed a petition for involuntary termination of the natural parents' parental rights pursuant to 23 Pa.C.S.A. § 2511, **Grounds for involuntary termination.**

¶ 3 Appellant raises the following questions for our review.

I. Did the trial court err in terminating ... Mother's parental rights when she had voluntarily placed her child with [CYS] when the child was 8 years old in order for Mother to obtain adequate housing and later for her to complete drug treatment, when Mother has obtained adequate housing and has completed services including drug treatment, especially in light of the close bond between [m]other and child?

II. Did the trial court err in refusing the request to allow the expert witness, Dr. Michael Crabtree, to in-

---

1. The child's father has not provided financial support and has no involvement with the child. Moreover, the record indicates father expressed to a CYS caseworker his desire to have his parental rights terminated. The April 4, 2001 Order terminated his (as well as mother's) parental rights. Father neither participated at the trial level nor does he participate on appeal.

terview and evaluate Mother and issue an amended report in order to give an unbiased opinion, since Dr. Crabtree had failed to initially meet with or evaluate Mother?

III. Did the trial court err in refusing the request for scheduling an additional hearing to allow the child to testify when she had been present at all prior hearings, anxious to testify, but was absent from the last hearing after being intimidated by [a CYS] caseworker?

(Appellant's brief at 5.)

■ ¶ 4 " 'The standard of review in cases involving the termination of parental rights is limited to the determination of whether the orphans' court's decree is supported by competent evidence.' " *In re Adoption of J.D.S.*, 763 A.2d 867, 870 (Pa.Super.2000), *quoting In re Julissa O.*, 746 A.2d 1137, 1139 (Pa.Super.2000).

■ ¶ 5 As the party seeking termination, CYS bore the burden of establishing, by clear and convincing evidence, grounds existed for doing so. " 'The standard of clear and convincing evidence means testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue.' " *In re Adoption of C.A.W.*, 453 Pa.Super. 277, 683 A.2d 911, 914 (1996), *appeal denied*, 548 Pa. 631, 694 A.2d 619 (1997), *quoting Matter of Sylvester*, 521 Pa. 300, 304, 555 A.2d 1202, 1203–1204 (1989).

¶ 6 In pertinent part, 23 Pa.C.S.A. § 2511 provides:

**(a) General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

\* \* \* \* \* \*

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.

■ ¶ 7 Above all else in determining whether parental rights should be terminated, adequate consideration must be given to the needs and welfare of the child. *In re Child M.*, 452 Pa.Super. 230, 681 A.2d 793 (1996), *appeal denied*, 546 Pa. 674, 686 A.2d 1307 (1996).

¶ 8 Mother argues that, "[a]t best, the evidence shows that [she] is struggling to overcome problems that lead her to seek voluntary placement of her daughter in the first instance. While it may be that Mother has not complied to the full satisfaction of [CYS], the more appropriate response from [CYS] would be to further assist Mother in achieving compliance, rather than terminating [her] parental rights." (Mother's brief at 12.)

■ ¶ 9 Upon review of the Findings of Fact and Conclusions of Law adopted by the trial court, we find ample support for our conclusion the trial court weighed heavily the needs and welfare of B.L.L. in determining termination of appellant's parental rights was appropriate.

¶ 10 The record reveals that prior to being placed with CYS, B.L.L. was doing poorly in school, missing school for significant periods of time and exhibiting behavioral problems. During this time, mother

was doing drugs and unable to care for the child. When an aunt was no longer able to care for B.L.L., mother placed her with CYS. Thereafter, mother attended only 20 of 38 scheduled visits with her. When mother failed to appear for the other 18 visits, B.L.L. became clearly upset.

¶ 11 Mother did not follow through with court-ordered services, has suffered from depression, anxiety and panic attacks, and refused to submit the name of her boyfriend to CYS so that a child care clearance check could be performed. Moreover, mother has used cocaine, heroin and ecstasy and has a long and continuing drug problem, which she refuses to acknowledge. Upon evaluation of mother's case, the psychological expert testified within a high degree of psychological certainty that mother would not be able to recover quickly enough to be an effective parent. The record further reveals that, while in foster care, B.L.L. has improved both academically and behaviorally. Upon independent review of the record, we find CYS satisfied its burden of proof and the trial court's decision was based upon sufficient and competent evidence of record.

■ ¶ 12 To the extent mother challenges the expert opinion rendered by psychologist, Dr. Michael Crabtree, we find no abuse of discretion with respect to the admission of his testimony.

'[T]he admission or exclusion of evidence is within the sound discretion of the trial court. In reviewing a challenge to the admissibility of evidence, we will only reverse a ruling by the trial court upon a showing that it abused its discretion or committed an error of law.'

*Detterline v. D'Ambrosio's Dodge, Inc.*, 763 A.2d 935, 938 (Pa.Super.2000), *quoting Ratti v. Wheeling Pittsburgh Steel Corp.*, 758 A.2d 695, 707 (Pa.Super.2000), *appeal denied*, 785 A.2d 90, 2001 Pa.LEXIS 41 (Pa.2001).

¶ 13 It is clear that the evidence presented was founded upon a thorough and detailed evaluation of mother's records. The evidence established that mother has been a drug addict since the age of 10, refuses to acknowledge that she is a drug addict, has been treated in 10 different facilities, recently relapsed and does not possess the mental stability to be an effective parent.

■ ¶ 14 Finally, we find no error on behalf of the trial court in refusing to schedule an additional hearing to allow B.L.L. to testify. The record unequivocally establishes that the child's needs and welfare are best served by termination of mother's parental rights. B.L.L. was represented by a guardian ad litem who presented her own expert evidence with respect to the child's needs and welfare. Moreover, we find no support for mother's argument that B.L.L. was intimidated by CYS caseworkers or otherwise discouraged from testifying.

¶ 15 While appellant raises an interesting point concerning the failure of the court to continue the hearing and permit the child to testify, she does not point or reference any statutory or judicial finding which requires the court in a termination proceeding to hear from the child. In the only Pennsylvania case which addresses this issue, *In re Child M., supra,* this Court noted that appellant did not cite any appellate decision which entitled a natural parent to force an abused or neglected child to testify in an involuntary termination proceeding. *Id.* at 798. In that case, this Court specifically refused to create such a requirement. We do likewise, but believe amplification and discussion of this issue will be of aid to the bar and the court in future cases which may involve this issue.

¶ 16 At the outset, we look to proceedings which involve custody changes or

analogous consideration vis a vis the placement of children as delineated in 23 Pa. C.S.A. § 101 *et seq.,* the Domestic Relations Code. Other proceedings involving custody related matters are covered in the Juvenile Act and Protection From Abuse Act, and clearly detail the reciprocal responsibilities of the parties and the court in dealing with children's testimony.

¶ 17 The three proceedings which statutorily define hearings relating to children and custody changes are the Child Custody Act, 23 P.S. § 2501 *et seq.,* the termination of parental rights sections contained therein at section 2511, **Grounds for involuntary termination,** and section 2512, **Petition for involuntary termination,** and the Adoption Act, 23 Pa.C.S.A. §§ 2301, 2501 *et seq.* It becomes readily apparent when reviewing the statutory and case law respective to custody, adoption and termination of parental rights, the standard of review in custody cases is markedly different than that in adoption and termination cases, and the scope of review is also distinguishable.

### CUSTODY

■ ¶ 18 The most significant difference between custody cases and termination cases lies with the quality of the determination which directly impacts on the standard of review. As between parents and others who have standing in a custody case, the standard of review is preponderance of the evidence. A child involved in a custody procedure, unless otherwise directed by the court, is not required to attend a hearing before the court or a conference. Pa.R.C.P.1915.11, **Appointment of Attorney for Child. Interrogation of Child. Attendance of Child at Hearing or Conference** (c).[2] While the law does not make counsel for the child mandatory, the court may, on its own mo-

tion or the motion of a party, appoint an attorney to represent the child in the action. Pa.R.C.P.1915.11(a). On the record the court may interrogate a child in open court or in chambers, subject to right of counsel to interrogate the child under the supervision of the court. Pa.R.C.P. 1915.11(b). In making an Order for partial custody or primary custody, the court must consider the preference of the child as well as other factors which legitimately impact the child's physical, intellectual and emotional well being. It is important for the court to at least attempt to determine, as best it can, the child's preference, which must comport with the child's best interest. *Commonwealth ex rel. Barbara M. v. Joseph M.,* 286 Pa.Super. 51, 428 A.2d 567 (1981).

¶ 19 The significant factors that implicate the standard of review outlined in the above discussion are:

1. The standard of proof is the fair preponderance of evidence.

2. The central inquiry goes to the best interest of the child.

3. Counsel is not mandated to represent the child unless the court, upon inquiry, determines its necessity.

4. The child may attend the hearing but is not required to do so unless directed by the court.

5. In proper cases the court must ascertain the preference of the child which is done by subjecting the child to inquiry and interrogation either in court or in chambers, with counsel present and participating, on the record.

6. The court will weigh the preference of the child, with other factors, based on the child's maturity, the

---

**2.** The Note following Pa.R.C.P.1915.11 states: "A party may bring a child to a conference or hearing but, in the absence of a order of court, is not required to do so."

cogency of the reasons and ultimately the best interest of the child.

## INVOLUNTARY TERMINATION OF PARENTAL RIGHTS

¶ 20 The proceeding for involuntary termination of parental rights stands upon a different foundation, a different standard of review, and requires judicial determinations in keeping with these statutory requirements.

■ ¶ 21 There is no provision for termination of parental rights at common law and, like adoption, it is purely a creature of legislation. Initially, termination of parental rights for all practical purposes ends the parent/child relationship as unequivocally as the death of the child, *Adoption of Harvey*, 375 Pa. 1, 99 A.2d 276 (1953), and for that reason the United States Supreme Court, in *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982), set the standard of proof at clear and convincing evidence.

■ ¶ 22 Secondly, the best interest of the child is not the first and only consideration. The court must initially find that the statutory requirements for termination of parental rights have been met. *In re Adoption of Steven S.*, 417 Pa.Super. 247, 612 A.2d 465 (1992), *appeal denied*, 533 Pa. 661, 625 A.2d 1194 (1993); *In Interest of Coast*, 385 Pa.Super. 450, 561 A.2d 762 (1989), *appeal denied*, 525 Pa. 593, 575 A.2d 560 (1990). The balancing test between two parents involved in a custody proceeding is not applicable because parental rights are not being divested as they would be following involuntary termination. Thus, the best interest standard applicable in custody cases requires the court to weigh which parent will be best able to serve the needs of the child. In a termination case, only after the court in a bifurcated process has determined within the same proceeding that the parent has or has not forfeited his right to parent the child, must the court turn to review of the needs and welfare of the child.

■ ¶ 23 The statute permitting the termination of parental rights outlines certain irreducible minimum requirements of care that parents must provide for their children, and a parent who cannot or will not meet the requirements within a reasonable time following intervention by the state, may properly be considered unfit and may properly have his or her rights terminated. *In re Diaz*, 447 Pa.Super. 327, 669 A.2d 372 (1995). The termination of parental rights may not occur "solely on the basis of environmental factors such as inadequate housing and furnishings, income, clothing and medical care if found to be beyond the control of the parent." 23 Pa.C.S.A. § 2511(b) **Other considerations.** It is not a procedure to take the children of the poor and give them to the rich, nor to take the children of the illiterate and give them to the educated, the children of the crude and give them to the cultured, or the children of the weak and give them to the strong and healthy. *In re Adoption of R.I.*, 468 Pa. 287, 361 A.2d 294 (1976), *cert. denied*, 429 U.S. 1032, 97 S.Ct. 722, 50 L.Ed.2d 743 (1977).

■ ¶ 24 The focus of involuntary termination proceedings is on the conduct of the parent(s). *In re I.L.G.'s Adoption*, 492 Pa. 507, 424 A.2d 1306 (1981). Following the hearing to determine if the parent's behavior warrants termination of his or her parental rights, the court must consider whether the termination will clearly promote the welfare of the child. *See* 23 Pa.C.S.A. § 2511(b), *supra; In re Bowman*, 436 Pa.Super. 10, 647 A.2d 217 (1994), *appeal granted*, 540 Pa. 592, 655 A.2d 981 (1995), *judgment aff'd*, 542 Pa. 268, 666 A.2d 274 (1995). A parent's basic constitutional right to the custody and rearing of his or her child is converted, upon the parent's failure to fulfill his or

her parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment. *In Interest of Lilley*, 719 A.2d 327 (Pa.Super.1998). The needs and welfare of the child are a discrete consideration to be determined only after the statutory requirements for termination have been met. As such, the preference of the child, reviewable in a custody proceeding, and his right to be heard on the record, is not relevant to termination proceedings, as the child is not electing a choice between two otherwise fit parents with whom he will be able to be placed. It is only when termination has been decreed and adoption pursued is the child's expression relevant to placement.

¶ 25 As a guarantee that the child's interest will be served throughout a termination proceeding, the law mandates that in addition to proof by clear and convincing evidence that grounds for termination exists, the court must appoint counsel for the child when the proceedings is being contested by one or both parents. 23 Pa. C.S.A. § 2313, **Representation (a) Child**; *In re M.T.*, 414 Pa.Super. 372, 607 A.2d 271 (1992). Likewise, if the parent(s) whose rights are subject to termination in an involuntary termination proceeding are unable to pay for counsel, or it would result in substantial financial hardship, the court will appoint counsel for them. 23 Pa.C.S.A. § 2313(a.1) **Parent.** In this manner, the fulfillment of the explicit statutory requirements for involuntary termination are assured adequate review and the resultant evaluation of the needs and welfare of the child are fully considered. In contrast to those which exist in custody or adoption proceedings, there is no statutory requirement nor is there any Pennsylvania appellate decision which permits or requires the testimony or preference by the child to be placed on the record as an integral part of a termination proceeding.

¶ 26 In summation of the above analysis, the following points are definitive:

1. Involuntary termination proceeding ends the fundamental right of the parent to custody of his/her child.

2. The standard of proof in termination proceedings is clear and convincing evidence, the highest level of proof required in any civil proceeding.

3. The termination proceeding focuses on the conduct of the parent(s), and the party seeking termination must prove by clear and convincing evidence the parent(s) cannot or will not meet the irreducible minimum necessities the parent(s) must provide for the children.

4. The needs and welfare of the children are essential considerations but bifurcated from and not relevant to the proof of the statutory requirement for termination of parental rights, which must first be alleged, proven and established before need and welfare are considered.

5. The testimony or preference of the child(ren) is not required or permitted in an involuntary proceeding as the child cannot cede his right to minimal proper nurturing.

6. The protection of the parents' and child's legal interests is assured by the mandatory requirement that they be represented throughout the proceedings by counsel; which is not a requirement in custody proceedings.

7. Following a Decree of termination, the child is available for adoption thereby fulfilling the ultimate goal of the proceedings, to provide for the needs and welfare of the child.

## ADOPTION

¶ 27 The final review in the trilogy of custodial proceedings pursuant to the Do-

mestic Relations Code is the adoption proceeding itself. Once the parental rights to a child have been terminated and the rights of the natural parents no longer exist, the best interest of the child becomes the standard by which a court must be guided on the adoption of the child. There is a wide range of statutory and case law guides and requirements which establish the parameters of the adoption proceeding. If satisfied that the needs and welfare of the child to be adopted will be promoted by the adoption and all requirements of the Adoption Act have been met, the court shall enter a Decree so finding. The Decree shall further direct that the child to be adopted has all the rights of a child and heir of the adopting parent(s) and shall be subject to the duties of a child to them. 23 Pa.C.S.A. § 2902, **Requirements and form of decree of adoption** (a) **General rule.** The trial court must base its decision on competent evidence and the decision must be made on what is perceived to be in the best interest of the child.

■ ¶ 28 The appellate court may vacate a Decree only if by clear and convincing proof the Decree's invalidity is established by the contesting party. *In re Singer's Adoption,* 457 Pa. 518, 326 A.2d 275 (1974).

■ ¶ 29 The adopting parent(s) and the adoptee must appear at the hearing, and if required, testify at the hearing under oath. 23 Pa.C.S.A. § 2723, **Attendance at hearing.** The proceedings in an adoption hearing are unique and involve parties, experts, investigators and non-parties to a greater extent than in custody hearings, but ultimately are subject to the same standard, that being the best interest of the child. *In re Adoption of A.S.H.,* 449 Pa.Super. 497, 674 A.2d 698 (1996). The best interest determination in custody and adoption matters is made on a case-by-case basis, and requires weighing of all

factors which bear upon the child's physical, intellectual, moral and spiritual well-being. 23 Pa.C.S.A. § 2724, **Testimony and investigation** (b) **Investigation;** *In re Adoption of A.S.H., supra.*

¶ 30 The following points derived from the analysis above control the legal conduct of an adoption proceeding:

1. Adoption hearings are established by petition and notice to the parties, and unless their presence is deemed unnecessary by the court, the adopting parents and adoptee must appear and, if required, testify under oath at the adoption hearing.

2. The court may require the presence of all persons whose consents are required by the Adoption Act, as well as representatives of agencies or individuals who have acted as intermediaries if their appearance or testimony would be helpful to the court.

3. Unless all consents and reports necessary to the adoption are present and in proper order, including the Decree of involuntary termination, no Decree of adoption may be entered.

4. The paramount concern of the court is the best interest of the child.

5. The Decree of adoption is entered upon presentment of competent evidence that the adoption is in the child's best interest. On appeal the standard of review is abuse of discretion, and the adoption Decree may only be vacated if the attacking party proves the Decree's invalidity by clear and convincing evidence.

6. The adoption Decree terminates forever all relations between the child and his or her natural parents and creates the reciprocal rights and duties of parent and child between

the adoptee and the adopting parent(s).

¶ 31 In summation, in custody proceedings there is no mandatory provision for providing counsel for the child, whereas in termination and adoption proceedings, the child must be represented by counsel. The burden of proof in custody and adoption cases is competent evidence, or preponderance of evidence to support the Order or Decree. The proof required in involuntary termination proceedings is clear and convincing evidence. In custody and adoption hearings, the testimony of the child, if relevant, is required to be placed on the record subject to interrogation by counsel under the supervision of the court. Finally, in involuntary termination proceedings, the testimony of the child is not a requisite part of the inquiry, which focuses entirely on the parenting capacity of the parent. No statute or case law exists which requires or permits the child's testimony to be an element of that review.

¶ 32 It has been the national, State and local policy for many years pursuant to the Adoption Assistance and Child Welfare Act of 1980 [3] (the Act) to remove children from foster placement limbo where they know neither a committed parent nor can look toward some semblance of a normal family life that is legally and emotionally equivalent to a natural family. The Act provides that States will be reimbursed for a percentage of foster care and adoption assistance payments when the State satisfies the Act's requirements. States such as Pennsylvania, which participate in the program, are required to make reasonable efforts to return the child to its home following foster placement, but failing to accomplish this due to the failure of the parent to benefit by such reasonable efforts, to move toward termination of parental rights and placement of the child through adoption. Foster home drift, one of the major failures of the child welfare system, was addressed by the federal government by a commitment to permanency planning, and mandated by the law of Pennsylvania in its participation in the Adoption and Safe Families Act of 1997 (Public Law 105–89, 111, stat. 2119). Succinctly, this means that when a child is placed in foster care, after reasonable efforts have been made to reestablish the biological relationship, the needs and welfare of the child require CYS and foster care institutions to work toward termination of parental rights, placing the child with adoptive parents. It is contemplated this process realistically should be completed within 18 months. B.L.L. is now 12 years of age, having been placed out of her aunt's home (where her mother had placed her for an indefinite period) and with CYS at age 8. Mother has made no progress in more than 5 years and B.L.L. is at a point where adoption becomes a less and less feasible possibility. No further delay can be tolerated. Mother's protest that more time is needed to permit her to reestablish herself, when there is no evidence she ever effectively provided a home for B.L.L., is simply not credible.

¶ 33 Based upon the foregoing, we find the trial court's decision is supported by competent evidence and that termination of mother's parental rights was appropriate under the circumstances.

¶ 34 Order affirmed.

3. 94 Stat. 500, 42 U.S.C. § 620 *et seq.*