J-S45016-17

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: J.C.F., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: Y.F., MOTHER | : | |
| | : | |
| | : | |
| | : | No. 519 EDA 2017 |

Appeal from the Order Entered January 10, 2017
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-AP-0001268-2016
CP-51-DP-0000085-2015

| | | |
|---|---|---|
| IN THE INTEREST OF: J.C.F., III, A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: Y.F., MOTHER | : | |
| | : | |
| | : | No. 520 EDA 2017 |

Appeal from the Order Entered January 10, 2017
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-AP-0001267-2016
CP-51-DP-0000084-2015

BEFORE:    GANTMAN, P.J., PANELLA, J., and STRASSBURGER, J.*

CONCURRING MEMORANDUM BY STRASSBURGER, J.:

I agree with the Majority that contrary to Mother's argument, nothing in our Supreme Court's decision in **In re Adoption of L.B.M.**, 161 A.3d 172 (Pa. 2017) requires that a child be present to express his or her preference at contested termination of parental rights (TPR) proceedings. As discussed by the Majority in this case, the majority of the Supreme Court in **L.B.M.** held that 23 Pa.C.S. § 2313(a) mandates appointment of counsel for the

*Retired Senior Judge assigned to the Superior Court.

purpose of representing the child's legal interest (*i.e.*, the child's preferred outcome), and cited *In re B.L.L.*, 787 A.2d 1007 (Pa. Super. 2001) for the proposition that representation by counsel in contested TPR hearings protects that interest. *See* Majority Memorandum at 16; *L.B.M.*, 161 A.3d at 174 n.3; *B.L.L.*, 787 A.2d at 1014 ("As a guarantee that the child's interest will be served throughout a termination proceeding, the law mandates that in addition to proof by clear and convincing evidence that grounds for termination exist, the court must appoint counsel for the child when the proceeding is being contested by one or both parents."). It is counsel's job to advocate on behalf of the child with regard to the child's preference. *See In re Adoption of J.N.M.*, 177 A.3d 937, 941 n.2 (Pa. Super. 2018). In some cases, after consultation with the child, counsel may decide that effective advocacy necessitates calling the child to testify. In other cases, counsel may choose to rely on other evidence in the record.

However, I write separately to express my concern that certain aspects of *B.L.L.* are at odds with the purpose of the Adoption Act, our caselaw, and the actual practice of many courts. By way of background, in *B.L.L.*, the mother contended that 12-year-old B.L.L. was anxious to testify but was absent from the last TPR hearing after being intimidated by the child welfare caseworker. *B.L.L.*, 787 A.2d at 1009. This Court held that the orphans' court did not err by denying the mother's request to schedule an additional hearing to permit B.L.L. to testify, noting that B.L.L. was

represented by a guardian *ad litem* who presented her own expert evidence with respect to B.L.L.'s needs and welfare. *Id.* at 1011. This Court also found no support for the contention that B.L.L. was intimidated or discouraged from testifying. *Id.* This Court then examined the differences between custody, adoption, and termination of parental rights matters, and concluded that unlike custody and adoption hearings, "[n]o statute or case law exists which **requires or permits** the child's testimony" in a termination of parental rights hearing.[1] *Id.* at 1016 (emphasis added).

When comparing termination of parental rights proceedings to custody proceedings, this Court observed that:

> [t]he balancing test between two parents involved in a custody proceeding is not applicable because parental rights are not being divested as they would be following involuntary termination. Thus, the best interest standard applicable in custody cases requires the court to weigh which parent will be best able to serve the needs of the child. In a termination case, only after the court in a bifurcated process has determined within the same proceeding that the parent has or has not forfeited his right to parent the child, must the court turn to review of the needs and welfare of the child.

*Id.* at 1013. However, the Court then went on to state that:

> [t]he needs and welfare of the child are a discrete consideration to be determined only after the statutory requirements for

---

[1] The Court also relied upon *In re Child M.*, 681 A.2d 793 (Pa. Super. 1996). *Id.* at 1011. In *Child M.*, this Court rejected the parent's attempt to invoke the constitutional protections of the Confrontation Clause to force a child to testify about the parent's abuse, stating that "despite the constitutional dimension of termination proceedings, there exists no direct civil equivalent to the federal or state constitutional clauses that govern the prosecution of crimes." *Child M.*, 681 A.2d at 798.

termination have been met. As such, the preference of the child, reviewable in a custody proceeding, and his right to be heard on the record, is not relevant to termination proceedings, as the child is not electing a choice between two otherwise fit parents with whom he will be able to be placed. It is only when termination has been decreed and adoption pursued is the child's expression relevant to placement.

*Id.* at 1014. *See also id.* ("The testimony or preference of the child(ren) is not required or permitted in an involuntary proceeding as the child cannot cede his right to minimal proper nurturing.").

It is true that before the orphans' court may examine whether termination serves the child's needs and welfare, the court must first determine whether the petitioner has proved clearly and convincingly that one of the substantive grounds for termination enumerated in 23 Pa.C.S. § 2511(a)(1)-(11) is met. *See In Interest of Coast*, 561 A.2d 762, 770 (Pa. 1989) (*en banc*). However, consideration of the child's needs and welfare is also a statutory requirement.[2] *See* 23 Pa.C.S. § 2511(b) ("The court in terminating the rights of a parent shall give **primary consideration** to the developmental, physical and emotional needs and welfare of the child.") (emphasis added).

---

[2] In cases involving subsection 2511(a)(5) and (8), courts must consider a child's needs and welfare twice: "once in [subsection] (a)(5) [or (a)(8)] to determine the initial statutory requisite[,] and if [that] statutory requisite[ is] satisfied, again under subsection (b)." *Coast*, 561 A.2d at 776; 23 Pa.C.S. § 2511(a)(5), (8) (requiring courts to determine as part of grounds for termination that "termination of the parental rights would best serve the needs and welfare of the child").

Judicial inquiry of the needs and welfare of the child examines "the effect of parents' actions or omissions upon the child" to determine whether the parent is meeting the child's developmental, physical, and emotional needs. *Coast*, 561 A.2d at 767. "[D]etermination of the child's needs and welfare requires consideration of the emotional bonds between the parent and child. The utmost attention should be paid to discerning the effect on the child of permanently severing the parental bond." *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citation and quotation marks omitted). Additionally, "[c]ommon sense dictates that courts considering termination must also consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents." *Id.* at 268. Finally, courts also may "equally emphasize the safety needs of the child," *In the Matter of Adoption of M.A.B.*, 166 A.3d 434, 448 (Pa. Super. 2017), and courts may determine that termination is appropriate when a child's safety and security needs outweigh any detriment in severing the relationship to a parent. *In re M.M.,* 106 A.3d 114, 119 (Pa. Super. 2014).

Given these considerations, I fail to understand how a child's preference or testimony is not relevant to an orphans' court inquiry. Moreover, as the Court recently recognized in *L.B.M.*, the purpose of section 2511 "is to ensure that the needs and welfare of the children involved are actively advanced." *L.B.M.*, 161 A.3d at 180. In fact, the Court described

the child's needs and welfare as the "ultimate issue that the trial court must resolve before granting the TPR." ***Id***.

To be sure, a child's preference is not and should not be the only inquiry. I agree that a "child cannot cede his right to minimal proper nurturing," ***B.L.L.***, 787 A.2d at 1014, and to that end, this Court and our Supreme Court have determined that termination is appropriate in many cases notwithstanding the child's strong bond with a parent or expressed preferred outcome of keeping the family ties intact. ***See, e.g.***, ***T.S.M.***, ***supra***; ***J.N.M.***, 177 A.3d at 946; ***In the Matter of T.D.***, 949 A.2d 910, 921–22 (Pa. Super. 2008). But given the statutory requirement that courts give primary consideration to the child's needs and welfare, I believe ***B.L.L.***'s statements regarding the relevance of a child's preference and testimony are at odds with the purpose of the Adoption Act, the caselaw construing the act, and the practice of many courts.[3]

---

[3] Notwithstanding the pronouncements in ***B.L.L.***, courts routinely consider the child's preference or testimony in TPR cases, whether directly or indirectly. ***See, e.g.***, ***In re K.Z.S.***, 946 A.2d 753, 762 (Pa. Super. 2008) (noting child wished to remain with foster parent, whom he viewed as his psychological parent, and concluding the bond between child and foster parent was "the primary bond to protect, given K.Z.S.' young age and his very limited contact with Mother"); ***In re K.C.F.***, 928 A.2d 1046, 1053 (Pa. Super. 2007) (explaining that termination met nine-year-old child's needs and welfare despite child's desire to reunify because child felt insecure around his mother and she was incapable of meeting his needs); ***In re E.M.***, 908 A.2d 297, 307 (Pa. Super. 2006) (concluding the orphans' court abused its discretion in determining that termination served the needs and welfare of 15- and 13-year-old children in part because of the children's preferences to reunify and reluctance to consent to adoption).

In my view, orphans' courts may consider the child's preference as part of its analysis, particularly to attempt to decipher the effect that termination would have on the child, and courts should have discretion to permit the child's testimony in appropriate cases.[4]  Nevertheless, I agree that neither the Adoption Act nor **L.B.M.** requires the child's attendance and testimony at a TPR hearing, and therefore I join the Majority's memorandum.

---

[4] While I may have permitted the children to testify in this case if I were the trial judge, given our standard of review, I join the Majority in the instant case because the trial court did not abuse its discretion in declining to require the children to testify.  Furthermore, as discussed *supra*, a child's presence and/or testimony is not required at every TPR hearing.  In the event that an orphans' court does permit a child to testify at a TPR hearing, in light of the sensitivity of the subject matter and the emotional impact upon the child, the best practice might be for the court to put limits on the scope and/or manner of the testimony, such as examining the child *in camera* without the parents present.