J-S06002-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: N.M.J., A MINOR | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: B.P., AUNT | : : : : : : | |
| | : | No. 2216 EDA 2021 |

Appeal from the Order Entered October 1, 2021,
in the Court of Common Pleas of Philadelphia County,
Juvenile Division at No(s): CP-51-AP-0000470-2017.

BEFORE: KUNSELMAN, J., McLAUGHLIN, J., and KING, J.

MEMORANDUM BY KUNSELMAN, J.:                    **FILED MARCH 28, 2022**

Appellant B.P. (Maternal Aunt) appeals, *pro se*, the order denying her petition to adopt her five-year-old niece, N.M.J. (the Child), filed pursuant to the Adoption Act, 23 Pa.C.S.A. §§ 2101–2910. Maternal Aunt brought her adoption petition after the Philadelphia County Court of Common Pleas involuntarily terminated the rights of the Child's biological parents. In addition to Maternal Aunt's petition, C.W. (Foster Mother) also petitioned for adoption. After a consolidated hearing, the trial court granted Foster Mother's petition and denied Maternal Aunt's petition. Maternal Aunt appealed, and after review, we affirm.

In its opinion filed in accordance with Pa.R.A.P. 1925(a), the trial court provided a thorough account of the factual and procedural history:

> The Philadelphia Department of Human Services (DHS) became aware of [the Child] after it received a general

protective services report [in] October [] 2015, alleging that Biological Mother and Child had tested positive for marijuana and cocaine at Child's birth. Biological Mother identified Foster Mother as a kinship resource, [FN1] and Child was discharged from the hospital into Foster Mother's care.

> FOOTNOTE 1: Biological Mother referred to Foster Mother as a "cousin" due to their close relationship.

Child was briefly reunified with Biological Mother approximately one month later but was again removed following a second [general protective services] report in April 2016 alleging that Biological Mother was using drugs. The maternal family, including Maternal Aunt, agreed at this time that the Child should once again be placed with Foster Mother. Child has remained in the care of Foster Mother since this time.

On September 19, 2018 the juvenile court ruled to terminate Biological Mother and Biological Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), and (b).[1] Maternal Aunt filed a petition to adopt on February 14, 2019. Foster Mother filed a petition to adopt, along with a report of intention to adopt, report of intermediary, post-placement report, SWAN child profile, and SWAN family approval document on October 22, 2019.

[The trial court] held bifurcated hearings on the contested adoption on August 5, 2021 and October 1, 2021.[2] At the August 5, 2021 hearing, [Br.P.], another maternal aunt of the Child, testified that she believes it would be in the best interest of the Child to be adopted by Maternal Aunt, the

---

[1] Both parents appealed their respective termination decrees, and this Court affirmed. ***See Interest of N.J.***, -- A.3d --, 2019 WL 2355104 (Pa. Super. 2019) (non-precedential decision); *allowance of appeal denied*, 217 A.3d 200 (Pa. 2019) (Mother's appeal); ***see also Interest of N.M.J.***, --A.3d --, 2019 WL 2304049 (Pa. Super. 2019) (non-precedential decision) (Father's appeal).

[2] The court characterized the hearings as "bifurcated," but the court apparently means to say that the hearing was consolidated but spanned two dates. We note further that Maternal Aunt appeared with counsel for these proceedings.

Appellant, because she had read that biological siblings should be placed together. [FN2]

> FOOTNOTE 2: Child's oldest biological sibling, N.P., was placed with Maternal Aunt in 2017. Maternal Aunt was granted custody of Child's other biological siblings, C.J.J. ([age 17]) and C.R.J. ([age 16]) on August 8, 2018.

She testified that she observed Child's siblings interact with [the Child] on two occasions – once on the Child's first birthday, and once more on Thanksgiving in 2017 – and that they interacted well. [Br.P.] also testified that she does not know if the Child has a bond with Maternal Aunt. She also testified that she does not believe the Child should be adopted by her Foster Mother because four of Foster Mother's biological children previously dropped out of high school, and because Foster Mother was not coordinating sibling visitations for Child. On cross-examination, however, [Br.P.] testified that the reasons sibling visitations stopped occurring was because Maternal Aunt was not in agreement with the visitation order. She also testified that both she and Maternal Aunt were ordered to stay away from any and all sibling visits on July 1, 2019.

Maternal Aunt also testified at the August 5, 2021 hearing. She testified that she loves the Child, and that she had a relationship with the Child in 2016 when she would occasionally see [the Child] with Biological Mother and Foster Mother. Later in the hearing, however, Maternal Aunt testified that she does not have a close relationship with the Child. She also testified that she and the Foster Mother used to be close, but that they had a falling out in 2016 based on concerns Maternal Aunt had regarding Foster Mother's drug activity. She also testified that despite her belief that Foster Mother had a history of drug usage, she provided Foster Mother with a reference to care for a different child in 2016. Maternal Aunt also testified that she does not believe Foster Mother can raise the Child because she believes that Foster Mother's biological children dropped out of school and use drugs.

Maternal Aunt testified that she believes it is in Child's best interest to be raised with her siblings who she claims are in her care. She further testified, however, that although she was awarded custody of two of the Child's siblings in 2018,

those children did not live with her until 2019 and would merely visit her prior to then. She further testified that due to her concerns and her desire for Child to be raised with her siblings, she had attempted to file for custody several times throughout the life of Child's dependency case. Additionally, Maternal Aunt confirmed that the reason that the Child's visits with her siblings were stopped was because she was not in agreement with the visitation order. Maternal Aunt also testified that her house has three bedrooms, that two of the Child's siblings share one room and the other sibling lives in the other, and that should the Child come to live with her, one of the Child's siblings would have to sleep in the basement which needs to be remodeled.

At the October 1, 2021 hearing, the Community Umbrella Agency (CUA) case manager, Keneisha White, testified that she has been the case manager for the Child's case since June 2017. She testified that Child was placed with Foster Mother immediately after the Child's birth due to the Child and Biological Mother testing positive for illegal substances. She testified that [Biological] Mother identified Foster Mother as a kinship resource at the time and referred to her as a "cousin." Ms. White further testified that Child and Foster Mother are bonded and that Child refers to Foster Mother as "mom" and looks to her to meet all of her basic needs. She testified that it would be detrimental for the Child to be removed from Foster Mother and would cause the Child irreparable harm because Foster Mother is the only caregiver she has ever known and because the Child is bonded with the other children in Foster Mother's home and considers them her family. Ms. White also testified that there is no record of Maternal Aunt ever visiting Child, and that Child and Maternal Aunt have not bonded at all. For these reasons, she believes it is in the Child's best interest for her to be adopted by Foster Mother.

Ms. White also testified that she was previously the CUA case manager for the Child's oldest sibling, N.P., who was placed in Maternal Aunt's home. She testified that through that role she had many interactions with Maternal Aunt and visited her home on a monthly basis between September 2018 and December 2020. She further testified that Maternal Aunt knew that she was the case manager for the Child but never once expressed to her that she wanted to have Child in her care. Ms. White also testified that during

the time that she served Maternal Aunt's home, she never once saw Child's other two siblings, C.J.J. and C.R.J. living there. She stated that it did not appear that the siblings lived in Maternal Aunt's home because none of their belongings were there. […] [H]owever, [Ms. White] would not consider the home to be appropriate for the Child. Ms. White further testified that Maternal Aunt's home was reassessed prior to the last court date and that Maternal Aunt had moved all of the clutter from the main floors to the basement. She did not believe that it would be possible for N.P. to live in the basement should the Child move into the home.

Ms. White also testified that the siblings were having visits with the Child previously, but that sibling visitation ended in June 2021 due to Maternal Aunt's concerns that community visits would be unsafe. Ms. White also testified that, in response to Maternal Aunt's concerns, she offered to have the visits be at the agency but that Maternal Aunt never responded. She further testified that Foster Mother has never been a barrier to sibling visits and has always been available and willing to host the visits. She testified that she believes that should Foster Mother be allowed to adopt the Child, she would continue to facilitate sibling visits. Ms. White also testified that Maternal Aunt, as well as [Br.P] and [maternal grandmother, D.P.] were issued stay away orders due to their reported harassment of Foster Mother.

On cross-examination, Ms. White testified that there was a family group decision meeting held in November 2017 at which time the maternal family expressed that they did not want the Child to be removed from Foster Mother's home. She also testified that Biological Mother had originally referred to Foster Mother as "cousin," and that she did not discover that Foster Mother was not biologically related to Child for an estimated two years. Ms. White further testified, however, that Foster Mother still fell under the category of "kinship" and that she was not treated any differently due to the fact that Biological Mother had identified her as a cousin. She also testified that Child is more bonded with Foster Mother than she is with her blood relatives.

Denise Actie, the family profile writer and finalization worker on the case, also testified at the October 1, 2021 hearing.

- 5 -

[…] [Ms. Actie testified that] she visited Child and Foster Mother more than fifty times. Ms. Actie testified that Child and Foster Mother have a strong parental bond and are very close. She stated that Child looks to Foster Mother to meet her needs and refers to Foster Mother as "mom." Ms. Actie also testified that Child has a sibling relationship with the other children in Foster Mother's home and refers to them as her sisters. She further testified that she believes that removing Child from Foster Mother's home would be detrimental to her growth and well-being because Child has been with Foster Mother for her entire life and they are bonded.

[…]

Foster Mother also testified at the October 1, 2021 hearing. […] Foster Mother testified that she would like to adopt Child and that Child wants to be adopted by her and that she considers Child to be her daughter. She testified that Child also has a close relationship with the other children living in her home. She further testified that she is committed to caring for Child's emotional, physical, and medical well-being. Foster Mother also testified that she will facilitate contact between the Child and her siblings should her adoption petition be granted, and that she has never stated anything to the contrary throughout the history of this case. Foster Mother testified that she harbors no ill-will against the biological maternal family, that she does not do drugs, and that she does not have a criminal history nor a DHS or child abuse history.

Trial Court Opinion, 11/15/21 (T.C.O.), 1-8 (footnote and citations to the record omitted) (capitalization adjusted).

The trial court issued its order denying Maternal Aunt's petition on October 1, 2021. After the court issued its order, Mother obtained new counsel and timely-filed notice of appeal and a concise statement of matters complained of on appeal, pursuant to Pa.R.A.P. 1925(a)(2).

As a preliminary matter, we must address Maternal Aunt's circumvention of our Rules of Appellate Procedure and determine which appellate issues have been preserved. Maternal Aunt's concise statement consisted of 17 individual issues. The trial court issued its Rule 1925(a) opinion on November 15, 2021. Thereafter, Maternal Aunt's counsel filed an application for leave to withdrawal, citing a fundamental disagreement about the representation. We granted counsel's request. Maternal Aunt then filed an application to amend her concise statement. We denied Maternal Aunt's application.

Of Maternal Aunt's 17 matters complained of on appeal, the trial court declined to address 10 of them, opining that Maternal Aunt failed to preserve these issues during the hearing. **See** T.C.O. at 8-12. After review, we agree that these issues are, in fact, waived. Pennsylvania Rule of Appellate Procedure 302(a) states: "Issues not raised in the trial court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a).

Moreover, Maternal Aunt has decided to abandon another issue, namely whether the trial court erred when it denied a motion to recuse brought by the Child's counsel. **See** Pa.R.A.P. 2116(a) ("No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby."). Even if Maternal Aunt preserved this issue elsewhere in her Brief, we would conclude that the issue was ultimately waived as well. Maternal Aunt did not join the motion to recuse, and thus she failed to preserve the

issue for our review. *See* Pa.R.A.P. 302(a). In sum, Maternal Aunt has only preserved the following six issues for our review:

1. Did the trial court err as a matter of law or abuse its discretion when it denied Maternal Aunt's petition for custody and allowed adoption of the minor Child by a non-family member?

2. Did the trial court err or abuse its discretion when it put substantial weight on the length of time the Child had been in the custody and care of the Foster [Mother] where the delay was caused by the trial court's failure to promptly resolve the Child's custody situation?

3. Did the trial court err or abuse its discretion when it permitted Foster [Mother] to adopt the minor Child where it was undisputed that at the time of the original placement, Foster [Mother] falsely represented to DHS that she was the Child's "maternal cousin," and there was evidence in the record that Foster [Mother] abused and sold illegal drugs?

4. Did the trial court err or abuse its discretion in denying Maternal Aunt's petition for custody where Maternal Aunt was ready, willing, and able to care for the Child, Maternal Aunt filed adoption papers before papers were filed by the Foster [Mother], the Child's three other natural-born siblings lived with Maternal Aunt, and there was no evidence that Maternal Aunt was an unfit parent?

5. Did the trial court err or abuse its discretion in sustaining objections at the hearing on October 1, 2021 to questions to the Foster [Mother] about whether her home was originally not certified as suitable?

6. Did the trial court error or abuse its discretion in sustaining objections at the hearing on October 1, 2021 to questions to the Foster [Mother] about whether Maternal Aunt and the Foster [Mother] had a failing out because Foster [Mother] was illegally selling drugs?

Maternal Aunt's Brief at 1-4 (unpaginated) (capitalization adjusted).[3]

Maternal Aunt's appellate issues fall into two categories: those concerning the substantive adoption decision and those concerning the court's evidentiary rulings. We address these contemporaneously, by category. We begin with those issues challenging the trial court's denial of Maternal Aunt's adoption petition, which represent the crux of her appeal.

Appellate review of a trial court's adoption determination is for an abuse of discretion:

> When reviewing a decree entered by an orphans' court, this Court must determine whether the record is free from legal error and the court's factual findings are supported by the evidence. Because the orphans' court sits as the fact-finder, it determines the credibility of the witnesses, and on review, we will not reverse its credibility determinations absent an abuse of discretion.

_____

[3] Maternal Aunt's Brief contains other nonconformities. The argument section is not divided into as many parts as there are questions to be argued, in violation of Pa.R.A.P. 2119(a). Maternal Aunt also does not cite to many relevant legal authorities. **See id.**

Although this Court is willing to liberally construe materials filed by a *pro se* litigant, *pro se* status congers no special benefit upon the appellant. **Commonwealth v. Adams**, 882 A.2d 496, 498 (Pa. Super. 2005) (citation omitted). "To the contrary, any person choosing to represent [herself] in a legal proceeding must, to a reasonable extent, assume that [her] lack of expertise and legal training will be [her] undoing." **Id.** (citation omitted).

Here, however, these defects do not substantially impair our ability to review the issues presented, and thus dismissal of Maternal Aunt's appeal is inappropriate in this case. **See Forrester v. Hanson**, 901 A.2d 548, 551 n.2 (Pa. Super. 2006); **see also** Pa.R.A.P. 2101 (providing that "if the defects in the brief…are substantial, the appeal or other matter may be quashed or dismissed.").

*In re E.M.I.*, 57 A.3d 1278, 1284 (Pa. Super. 2012) (citation omitted).

The polestar of adoption proceedings is the best interest of the adoptee. Pursuant to 23 Pa.C.S. § 2902(a), the orphans' court must determine whether the proposed adoption would promote the child's needs and welfare:

> If satisfied that the statements made in the petition are true, that the needs and welfare of the person proposed to be adopted will be promoted by the adoption and that all requirements of this part have been met, the court shall enter a decree so finding and directing that the person proposed to be adopted shall have all the rights of a child and heir of the adopting parent or parents and shall be subject to the duties of a child to him or them.

23 Pa.C.S. § 2902(a).

We also observe that the child's best interest is the only relevant factor in determining whether to grant or deny a petition. *See* 1980 Comment to 23 Pa.C.S. § 2724(b). Section 2724(b) provides, in relevant part: "[T]he age, sex, health, social and economic status or racial, ethnic or religious background of the child or adopting parents shall not preclude an adoption but the court shall decide its desirability on the basis of the physical, mental and emotional needs and welfare of the child." *See also In re K.D.*, 144 A.3d 145, 152-153 (Pa. Super. 2016) (citation omitted).

Instantly, Maternal Aunt argues that the trial court erred when it denied her petition, because it was in the Child's best interests to be adopted by a biological family member. Specifically, Maternal Aunt argues that it was in the Child's best interests to live in the same home as her siblings, and that

adoption by Foster Mother was not in the Child's interests, because Foster Mother was not a blood relation.

Family preservation is a valid consideration, but it is not a dispositive one. When the choice becomes whether to keep a child with the biological family, we have acknowledged that family preservation is the desired outcome. **K.D.**, 144 A.3d at 153. "However, the goal of preserving the family unit cannot be elevated above all other factors when considering the best interests of the children, but must be weighed in conjunction with other factors." **Id**. (citing **In re Adoption of G.R.L.**, 26 A.3d 1124, 1127 (Pa. Super. 2011)).

Here, the trial court concluded that adoption by Foster Mother was in the best interests of the Child, even if that meant that the biological family would not be preserved. On appeal, we must decide whether the trial court's decision was supported by the record. Our review reveals the following facts.

Importantly, the trial court was not convinced that two of the Child's three siblings actually lived with Maternal Aunt. The case manager had been conducting regular home-visits over the course of two years, but she had never seen these siblings in Maternal Aunt's home, nor did she observe evidence that they lived there. **See** T.C.O. at 13; **see also** N.T., 8/5/21 (Day 1), at 108; **and see** N.T., 10/1/21 (Day 2) at 9, 11-12). The trial court also noted that the older two siblings were now adults, and the youngest sibling was 16-years-old. Thus, the court was not persuaded by Maternal Aunt's

argument that the Child should be raised with her siblings, as the siblings were already raised. T.C.O. at 14.

Still, the court recognized the importance of maintaining the sibling relationship. But to that end, the court believed Foster Mother's testimony that she is committed to maintaining the relationship between the Child her siblings. *Id.* (citing N.T. (Day 2), at 13, 49, 70). In fact, the trial court determined that, to the extent that the Child and her siblings did not have a close relationship, the fault belonged to Maternal Aunt. The court found "that Maternal Aunt herself was the barrier between the Child and the biological siblings having visits together." *Id.* (citing N.T. (Day 1), at 65, 97; N.T. (Day 2) at 12). Moreover, the evidence reveals that the Child is closer to the children she lives with in Foster Mother's home, whom the Child refers to as her sisters, than to his biological siblings. *See* N.T. (Day 2), at 39.

We also cannot overlook the fact that the Child has lived with Foster Mother for virtually her entire life. The Child was placed with Foster Mother at the time of the Child's birth in 2015, and she has resided with Foster Mother for all but four months. Clearly, they have a strong bond. The Child refers to Foster Mother as "mom" and looks to Foster Mother to support her needs. *See* T.C.O. (citing N.T. (Day 1) at 51 and N.T. (Day 2) at 7, 15, 16-17, 36-39). The trial court also heard testimony that the Child would suffer emotional trauma if she were removed from Foster Mother's care. *See* N.T. (Day 2) at 14-15.

Maternal Aunt seems to suggest that the trial court should not have given so much weight to the fact that the Child had spent her whole life with Foster Mother. Maternal Aunt reasons that Foster Mother should not benefit from this fact, because the case was prolonged by the trial court's delay. We disagree. The subject petitions were filed after the conclusion of a contested dependency case, which included a series of appeals following the termination of the biological parents' rights. In any event, the delay was not caused by Foster Mother.

The trial court was also unpersuaded by the fact that Foster Mother was not related to the Child. The court determined that Foster Mother never lied about her identity, and the court noted that it was the biological mother who identified Foster Mother as a cousin when the Child was placed in her care. **See** T.C.O. (citing N.T. (Day 2) at 6, 21, 59-60, 62). The CUA case manager also explained that Foster Mother was never treated any differently due to the fact that she was originally thought to be a blood relation. N.T. (Day 2) at 22-23. Regardless of whether Foster Mother was a blood relation, she still met the definition of "kin," which is defined as an "individual with a significant, positive relationship with the child or family." 67 Pa.C.S.A. § 3102 (Definitions).

In fact, Foster Mother's status as a non-relative is largely irrelevant in this case, because Maternal Aunt had virtually no relationship with the Child. The trial court noted that Maternal Aunt testified that she is not close with the Child; and Br.P. (another aunt) testified that she was unaware of any bond

- 13 -

between the Child and Maternal Aunt. *See* T.C.O. at 16 (citing N.T. (Day 1) at 57, 95 and citing N.T. (Day 2) at 25-26). Contrary to Maternal Aunt's arguments, the trial court did not find her to be an unfit parent. Rather, the trial court determined that adoption by Foster Mother would be in the Child's best interests.[4]

Therefore, the record supports the trial court's denial of Maternal Aunt's petition for adoption in favor of the petition filed by Foster Mother. The trial court properly weighed the best interests of the Child. To hold otherwise would be to improperly elevate the goal of family preservation above the multitude of factors supporting the adoption by Foster Mother. *See K.D.*, 144 A.3d at 153.

We turn next to Maternal Aunt's second category of issues, those pertaining to evidentiary errors. Specifically, Maternal Aunt argues that the court erred when it sustained certain objections. Maternal Aunt had sought to question Foster Mother about whether DHS had originally certified Foster Mother's home as unsuitable. Moreover, Maternal Aunt had sought to question Foster Mother about whether the deterioration of their relationship was due to Foster Mother illegally selling drugs. Opposing counsel objected to these lines of questioning on relevancy grounds. The court sustained the objections.

---

[4] Finally, we note that Maternal Aunt relies, in part, on the Child Custody Act when making her appellate argument. Because this case concerns an adoption, not a custody dispute, the trial court properly analyzed the facts under the Adoption Act.

"The admission or exclusion of evidence is within the sound discretion of the trial court. ***In re B.L.L.***, 787 A.2d 1007, 1011 (Pa. Super. 2001) (citation omitted). "In reviewing a challenge to the admissibility of evidence, we will only reverse a ruling by the trial court upon a showing that it abused its discretion or committed an error of law." ***Id.***

Our Rules of Evidence provide the following standards, when determining relevancy:

> Evidence is relevant: (a) it has a tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.

Pa.R.E. 401.

> All relevant evidence is admissible, except as otherwise provided by law. Evidence that is not relevant is not admissible.

Pa.R.E. 402.

> The court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

Pa.R.E. 403.

The trial court addressed its relevancy rulings in its Rule 1925(a) opinion:

> Maternal Aunt argues on appeal that this Court erred or abused its discretion by sustaining the objection to Maternal Aunt's question posed to Foster Mother about whether her home was originally not certified as suitable. Attorney for [Foster] Mother objected to this question and this court

- 15 -

sustained the objection. N.T. (Day 2) at 67. This court found the question to be irrelevant because the testimony demonstrated that Child was originally placed with Foster Mother at birth, that Child was briefly reunified with Mother, and then was again placed with Foster Mother where she has remained for the past six[5] years. *Id.* at 68; N.T. (Day 1) at 51. Whether Foster Mother's home was "originally" not certified six years ago, at the very beginning of the dependency case, is irrelevant in determining the Child's best interests in the current adoption matter. Therefore, this court properly sustained the objection to Maternal Aunt's question to Foster Mother regarding the original certification of her home.

Maternal Aunt also argues on appeal that this court erred or abused its discretion by sustaining the objections to Maternal Aunt's questions posed to Foster Mother regarding her relationship with Maternal Aunt. Specifically, counsel for Maternal Aunt asked Foster Mother if she and Maternal Aunt had previously had a falling out due to Foster Mother selling her medication. N.T. (Day 2) at 68. Counsel for Foster Mother objected to the question and this court sustained the objection. *Id.*

[…]

Foster Mother had already testified on direct examination regarding the relationship between the parties and stated that she harbors no ill-will against the maternal family. *Id.* at 61-62. This court finds Foster Mother to be credible and believes that Foster Mother wishes to adopt Child because of the significant parent-child bond and love they have developed over the past six years, not due to any alleged interpersonal conflict between the parties as Maternal Aunt seems to assert. This court does not find the relationship between Foster Mother and Maternal Aunt to be relevant in determining the best interests of the Child and therefore this court properly sustained the objections to Maternal Aunt's questions regarding that relationship.

---

[5] Throughout this excerpt, the trial court referred to the age of the Child (and thus the age of the case) as being six years old. The Child was technically five years old, but at the time of the adoption proceedings, she was days away from her sixth birthday.

- 16 -

T.C.O. at 18-19 (footnote and some citations to the record omitted) (capitalization adjusted).

We add that Foster Mother testified that she does not use drugs, that she has no criminal history, nor history with DHS. **See** N.T. (Day 2) at 62. After review, we discern no abuse of discretion. The trial court was within its purview when it decided that the answers to Maternal Aunt's questions would not be of consequence to the adoption action. **See** Pa.R.E. 401(b).

To conclude: the trial court did not err, nor abuse its discretion, when it concluded that it was in the Child's best interests to be adopted by Foster Mother, even though such an adoption would not preserve the biological family. Thus, the court properly denied Maternal Aunt's petition. Moreover, the court did not err, nor abuse its discretion, when it sustained certain objections on relevancy grounds. These questions were irrelevant to the underlying adoption issue.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/28/2022