J-S40032-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: A.A.O., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: A.O., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 154 EDA 2018 |

Appeal from the Order November 30, 2017
In the Court of Common Pleas of Philadelphia County Family Court at
No(s):  51-FN-002668-2014,
CP-51-AP-0000111-2017, CP-51-DP-0002929-2014

| | | |
|---|---|---|
| IN THE INTEREST OF: S.M.O., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: A.O., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 156 EDA 2018 |

Appeal from the Order November 30, 2017
In the Court of Common Pleas of Philadelphia County Family Court at
No(s):  51-FN-002668-2014,
CP-51-AP-0000112-2017, CP-51-DP-0002928-2014

| | | |
|---|---|---|
| IN THE INTEREST OF: L.M.O., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: A.O., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 157 EDA 2018 |

.

Appeal from the Order November 30, 2017
In the Court of Common Pleas of Philadelphia County Family Court at
No(s): 51-FN-002668-2014,
CP-51-AP-0000113-2017, CP-51-DP-0002927-2014

| | | |
|---|---|---|
| IN THE INTEREST OF: E.J.O., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: A.O., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 158 EDA 2018 |

Appeal from the Order November 30, 2017
In the Court of Common Pleas of Philadelphia County Family Court at
No(s): 51-FN-002668-2014,
CP-51-AP-0000114-2017, CP-51-DP-0002931-2014

BEFORE:   LAZARUS, J., DUBOW, J., and PLATT*, J.

MEMORANDUM BY LAZARUS, J.:                          Filed July 20, 2018

A.O. (Mother) appeals from the trial court's order involuntarily terminating her rights to her minor children, A.A.O. (born 12/04), S.M.O. (born 6/09), L.M.O. (born 2/07), and E.J.O. (born 5/11) (collectively, Children).  After careful review, we vacate and remand.

In December 2014, the Philadelphia Department of Human Services (DHS) first became aware of Mother and her family when it received a report that one of Mother's other children, M.O., attended school with cuts and

_____

*Retired Senior Judge assigned to the Superior Court.

abrasions on his right ankle and knuckles. Mother allegedly threw crutches at M.O. in an effort to keep him from going to school, causing the open wounds to his ankle and knuckles. The report further alleged that the home was filthy and housed ten dogs, including a dead dog with puppies. Parents were unemployed, the family had a history of involvement with DHS, and three other siblings of school age were being kept home by parents. DHS visited the home and found it was without heat, had holes in the walls and doors, and trash was strewn throughout the dwelling. Numerous dogs and cats were living there in unsanitary conditions and seven children were sleeping in the same small bedroom. DHS entered a protective custody order for Children and they were placed in foster care.

On April 20, 2015, Children were adjudicated dependent, legal custody to remain with DHS. The following parental objectives were set for Mother: (1) address and stabilize mental health by continuing treatment; (2) sign release forms for the Community Umbrella Agency (CUA) to obtain mental health background information; (3) attend appointments for Children and sign releases and consents for their treatment; (4) contact Intellectual Disability Services (IDS) to schedule intake appointment; (5) participate in Parent-Child Information Therapy (PCIT); (6) and comply with monthly, supervised visits with Children at the agency. In September 2015, Mother was diagnosed with Post Traumatic Stress Disorder (PTSD), bipolar disorder, major depressive disorder, and a learning disability. Mother also has a history of drug abuse.

Mother's weekly, supervised visitation with Children was increased from one to four hours in January 2016. In March 2016, the court reduced Mother's supervised visitation at the agency to every other week for two hours. In August 2016, Mother was discharged from a drug and alcohol program due to her failure to report for services. Mother tested positive for opiates in October 2016. At an October 25, 2016 permanency review hearing, the court determined that Mother had been minimally compliant with her parental objectives, having not completed parenting classes or obtained suitable housing. Mother tested positive for opiates again in December 2016.

On January 30, 2017, DHS filed petitions to involuntarily terminate Mother's parental rights to Children pursuant to 23 Pa.C.S. §§ 2511(a)(1), (2), (5), (8), and (b) of the Adoption Act.[1] On April 11, 2017, the trial court appointed a Child Advocate Attorney (CAA), Regina Charles-Asar, Esquire, for all four Children. A goal change/termination hearing was held on November 30, 2017. At the hearing, a CUA case manager, parenting capacity evaluator, former CUA case manager, CUA supervisor, Educational Decision Maker, and Mother testified. The court ultimately terminated Mother's parental rights to Children under sections 2511(a)(1), (2), (5), (8), and (b) of the Adoption Act. Mother filed a timely notice of appeal and court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. She presents one issue

_____

[1] 23 Pa.C.S. §§ 2101-2910.

for our consideration: Whether the trial court erred in refusing to determine if legal counsel for the Children had met with the children, had determined their legal interests, and whether counsel understood her duties as legal counsel?[2]

Pursuant to 23 Pa.C.S.A. § 2313(a), a child has a statutory right to counsel in a contested involuntary termination of parental rights proceeding. Section 2313(a) states:

> (a) Child.--**The court shall appoint counsel to represent the child in an involuntary termination proceeding when the proceeding is being contested by one or both of the parents.** The court may appoint counsel or a guardian *ad litem* to represent any child who has not reached the age of 18 years and is subject to any other proceeding under this part whenever it is in the best interests of the child. No attorney or law firm shall represent both the child and the adopting parent or parents.

23 Pa.C.S.A. § 2313(a) (emphasis added). *See In re Adoption of L.B.M.*, 161 A.3d 172, 179-80 (Pa. 2017) (plurality decision) (Supreme Court held that under section 2313(a), courts must appoint counsel to represent legal interest of child in contested involuntary termination proceeding). *See also See In re K.J.H.*, 180 A.3d 411, 413 (Pa. Super. 2018) (holding that failure to appoint legal counsel to child in contested involuntary termination of parental rights proceeding is structural error).

_____

[2] Although Mother's Rule 1925(b) statements contain additional issues, on appeal she has only presented the singular issue about whether Children's CAA properly carried out her legal duties. Accordingly, we have confined our review to that issue on appeal.

Counsel representing children must "represent [their clients] with zeal and professionalism. [Children have] no say in [appointment of counsel] and deserve to have the benefit of effective representation, particularly when a matter as important as [their] future relationship with a biological parent is at stake." *In re Adoption of T.M.L.M.*, 2018 PA Super 87 (Pa. Super. filed April 13, 2018), citing *In re J.J.F.*, 729 A.2d 79, 83 (Pa. Super. 1999) (Schiller, J., concurring). "A child's legal interests are distinct from his or her best interests, in that a child's legal interests are synonymous with the child's preferred outcome, while a child's best interests must be determined by the court." *L.B.M.*, 161 A.3d at 174.

Here, there is no dispute that the trial court properly stayed the termination proceedings until counsel, at Mother's request, was appointed for Children in compliance with *L.B.M.*'s mandate. However, Mother contends that Children's legal counsel "did not ensure that the [C]hild[ren]'s legal rights and interests [were] adequately protected." Appellant's Brief, at 13.

*In T.M.L.M.*, *supra*, a mother appealed from an order terminating her parental rights to her minor son, who was six years old at the time of the termination hearings. On appeal, our Court *sua sponte* raised the issue of whether the child's appointed legal counsel satisfied the requirements of section 2313(a) as espoused in *L.B.M.* The Court noted that the child's attorney "cross-examined certain witnesses but did not introduce any witnesses or evidence. Moreover, when counsel addressed the trial court, she

stated "I did not have occasion to meet with [child] or talk with him directly. . . . So that my only concern [is] his best interests." *Id.* at *6-7.

In *T.M.L.M.*, our Court noted that it was unable to locate in the record where the attorney had set forth the child's preferred outcome or where she indicated that she was unable to ascertain child's preferred outcome due to his age, development or other reason. *Id.* at *7-8. In fact, our Court found that counsel "freely admitted that she did not even attempt to interview [c]hild [and] directly admitted that her 'only concern' was his best interests." *Id.* at *8. Making matters worse for appellate review, counsel did not file her own brief or join in the brief of another party. *Id.* The Court concluded that, because child likely had feelings "one way or another about his mother and his permanency," child was deprived of his statutory right to counsel. *Id.* at *10. Thus, the Court vacated the termination order, remanded for the appointment of separate counsel to represent child's legal interests, and, after new counsel reviewed the prior proceedings and consulted with child about his legal interests, instructed counsel to notify the court regarding whether a new termination hearing was warranted. *Id.* at *10-11.

Instantly, it was imperative that appointed counsel for Children ascertain each Child's position directly and advocate in a manner designed to effectuate those positions. *T.M.L.M.*, *supra*. At the time of the termination hearing, Children ranged in age from 6½ years old to 12½ years old. Thus, Children were not too young to express their wishes or provide input regarding

- 7 -

their legal interests as related to the termination of Mother's parental rights. *Cf. L.B.M.*, *supra* at 443 (dissenting and concurring justices noting that remand for determination of whether child's legal interests differed from best interests unnecessary where child too young or incapacitated to express her wishes). Moreover, because of the number of children involved in this proceeding, counsel also runs the risk that she cannot ethically represent multiple children in a family because their legal interests may diverge. *Id.*

Prior to the start of the termination hearing, Mother's counsel repeatedly requested that the court ask the CAA to testify that she had had conversations with each child regarding their individual legal interests or preferred outcomes in the termination proceeding. N.T. Termination Proceeding, 11/30/1/17, at 54-55. The court refused the requests each time, noting:

> That's an issue between counsel and their client. It's not a reason to preclude a hearing. And a hearing would entertain almost all the evidence that would come in during the hearing [and] would not be based upon what counsel and her clients were able to accomplish and whether or not the privity between counsel and her client may be an issue. But it is privity and if and when it's necessary it becomes part of the evidence of this case, which I'm not ruling it is right now, because of the fact that this is a termination of parental rights proceeding and not an adoption hearing.

*Id.* at 54. In response to this pronouncement from the court, Mother's counsel indicated that she was not asking the CAA to disclose any privileged communications between the CAA and each child, but was just inquiring as to "whether a conversation took place." *Id.* at 55.

A review of the record indicates that the CAA asked only the following questions of witnesses at the termination hearing:

- Whether the psychologist had discussed Children's special needs and Mother's ability to care for Children with Mother;
- Whether the kids had IEPs in school when a case manager came on the case;
- Whether a case manager recalled if two of the younger Children needed oral surgery and whether parents were available to sign forms to get the Children up to date medically;
- Why the educational decision maker was appointed, whether she had observed the Children with their resource parent, and whether the Children look to the resource parent as a parental figure for nurturing and support; and
- Whether, over the last three months, Children had asked another caseworker to see their parents, when was the last time that Mom had seen the Children, do the Children act out after they visit with Mom, who calms the Children down after their visits, and whether the Children's behavior has improved due to the lack of visits with Mom.

N.T. Termination Hearing, 11/30/17, at 15, 74, 133, 168, 223, & 255.

Looking at the extent of the CAA's questions at the hearing, we are unable to discern whether counsel adequately considered each Child's individual legal interest, in addition to his or her best interest, in the context of the termination proceedings. The questions the CAA asked the witnesses were not the type intended to garner a response that would shed light on each Child's preferred outcome. Moreover, the fact that the CAA has not filed a brief in the matter makes the inquiry into her legal representation of Children that much more difficult.

The facts of this case are simply not as clear as in *T.M.L.M.*, where child's counsel admitted that she did not attempt to interview child and that she only concerned herself with child's best interests. Moreover, because the trial court in the instant matter refused to permit counsel to explain whether

she had fulfilled her duty of meeting with each child individually to determine his or her legal interest or preferred outcome in the matter, we are constrained to reverse and remand.[3]   Accordingly, we vacate the order terminating Mother's parental rights and remand this case for an on-the-record determination as to whether counsel adequately consulted with each Child and determined his or her legal interests in the matter.  If the court concludes that counsel did not carry out her legal duties, as espoused in **L.B.M.**, then the court shall order a new termination hearing to provide counsel an opportunity to advocate on each Child's behalf.  If, however, the court is convinced that counsel fulfilled her duty to each Child, then it may reaffirm its original termination order.

Order vacated without prejudice to permit court to reenter original order if new hearing not deemed necessary.  Case remanded for proceedings consistent with this decision.  Jurisdiction relinquished.

Judge Platt joins the Memorandum.

Judge Dubow did not participate in the consideration or decision of this case.

---

[3] We note that, unlike the case in custody or adoption proceedings, "there is no statutory requirement nor is there any Pennsylvania appellate decision which permits or requires the testimony or preference by the child to be placed on the record as an integral part of a termination proceeding." **In re B.L.L.**, 787 A.2d 1007, 1014 (Pa. Super. 2001).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/20/2018