J. A02041/20

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: C.M., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| APPEAL OF: SOMERSET COUNTY | : | |
| CHILDREN AND YOUTH SERVICES | : | No. 1365 WDA 2019 |

Appeal from the Order Entered August 7, 2019,
in the Court of Common Pleas of Somerset County
Orphans' Court at No. 16 Adoption 2017

BEFORE: SHOGAN, J., OLSON, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED MARCH 10, 2020**

Somerset County Children and Youth Services ("CYS") appeals from the orphans' court order denying its petition to terminate the parental rights of K.M. ("Mother") to her natural male child, C.M. ("Child"), born in February of 2012. After careful review, we vacate and remand for further proceedings.

The orphans' court set forth its findings of fact at the November 28, 2017 hearing on CYS's petition for involuntary termination of Mother's parental rights, as follows:

> [C]hild is currently five years of age.
>
> The natural mother of the [C]hild is [K.M.] and the natural father of the [C]hild is [J.A.[1]]
>
> This case was referred to the CYS agency approximately two years ago when an initial referral was received on or about October 21, 2015, related to

---

[1] The record reflects that the orphans' court terminated J.A.'s parental rights to C.M. by order entered on November 28, 2017. J.A. did not appeal the termination order.

alleged drug usage and [M]other's boyfriend at the time having overdosed on heroin. At that time, natural father was incarcerated.

Based on the investigation conducted by [CYS, CYS] created a Safety Plan for the [C]hild, which provided that [M]other would not have any unsupervised contact with the [C]hild. The supervised visitation or custody between [M]other and [C]hild was to be supervised by the maternal grandparents.

On or about November 4, 2015, [CYS] conducted a home visit and discovered that [M]other was having unsupervised contact and custody with the [C]hild. The police were summoned; and it was discovered that [M]other not only was having unsupervised custody of the [C]hild, but was in possession of a controlled substance and drug paraphernalia while in the presence of the [C]hild. As a result, the [C]hild was removed from the custody of [M]other and maternal grandparents and emergency custody was granted to the agency and the child was placed into foster care with [J.P. and L.P.]

A Shelter Care Hearing was conducted; after which, a Dependency Petition was filed on November 10, 2015.

The [C]hild was adjudicated dependent on December 16, 2015. As a result of the adjudication, Court-Ordered goals were set into place and a Child Permanency Plan was developed. The goals were consistent for both [M]other and natural father.

The [orphans' c]ourt has taken judicial notice of the Juvenile Dependency proceedings regarding [the C]hild that are filed [at a separate docket in] Somerset County . . . .

. . . .

With respect to [M]other, supervised visitation was scheduled and those visits were conducted at the Somerset County Children's Aid Home. [M]other

currently lives with her parents in Windber, Pennsylvania.

Although it was a Court-Ordered condition and goal, [M]other did not complete a mental health evaluation, although [M]other has been receiving mental health counseling.

On or about February 29, 2016, [M]other successfully completed inpatient rehabilitation at the Turning Point Chemical Dependency Facility. Upon successful discharge from that program, it was recommended that [M]other undergo intensive outpatient treatment at Twin Lakes Center.

On or about July 27, 2016, [M]other relapsed and was unsuccessfully discharged from the Twin Lakes Center. Thereafter, on December 7th, 2016, [M]other tested positive for barbiturates after a drug screen was conducted. On or about December 13, 2016, [M]other entered inpatient rehabilitation treatment at the Twin Lakes Center. Mother successfully completed inpatient treatment at Twin Lakes Center; and upon discharge, was recommended to complete outpatient treatment. In April 2017, [M]other was unsuccessfully discharged from the outpatient treatment program at Twin Lakes Center based on her failure to follow the attendance policy. More recently, on May 10, 2017, another drug screen was conducted and [M]other tested positive for cocaine, heroin and marijuana.[2]

With respect to the incident on October 21, 2015, [M]other was arrested and charged with various drug charges, child endangerment charges, corruption of minors' charges and recklessly endangering another person. Mother was convicted [of] or pled guilty [to] several of those charges and was sentenced to probation by the [sentencing c]ourt in Somerset County, Pennsylvania.

---

[2] We note that the record reflects that the petition for involuntary termination of Mother's parental rights was filed on June 20, 2017.

Additionally, more recently, [M]other was charged on or about September 7, 2017, relating to an incident that occurred on November 2nd, 2015, in Cambria County. Mother recently pled guilty to a felony drug charge in that case and is scheduled to be sentenced by the [sentencing c]ourt in Cambria County, Pennsylvania, in January 2018.

[M]other has attended numerous visits with the [C]hild since the [C]hild has been removed from her custody with those visits having been scheduled by [CYS].

Additionally, the [orphans' c]ourt finds that [M]other has provided the [C]hild with cards, letters and drawings while the [C]hild has been in the custody and care of [CYS].

Additionally, [M]other has provided the [C]hild with gifts during numerous visits and has also provided the [C]hild with birthday gifts and Christmas gifts.

The [orphans' c]ourt finds that [M]other has also had consistent telephone contact with the [C]hild on an approximate weekly basis.

. . . .

With respect to the [C]hild's placement, the [orphans' c]ourt finds that [CYS] did consider the maternal grandparents for kinship care. However, the consideration was not granted due to maternal grandparents not being truthful with [CYS] and also failing to supervise visitation and custody between the [C]hild and [M]other.

The [orphans' c]ourt finds that while [M]other was incarcerated, visits were conducted every two weeks with the [C]hild and then subsequently increased to one time per week.

[M]other has attended some medical appointments for the [C]hild when she was notified by the foster parents of those appointments.

The [orphans c]ourt finds that [M]other has maintained a relationship with the foster parents and has contact with them with respect to the [C]hild and the [C]hild's current activities and well-being.

The [orphans' c]ourt finds that when the [C]hild talks with [M]other, the [C]hild addresses [M]other as mommy.

The [orphans' c]ourt finds that [M]other, in connection with criminal charges, has successfully completed the Somerset County Daily Reporting Center Program.

The [orphans' c]ourt further finds that from the time of placement of the [C]hild, [M]other has relapsed as a result of drug usage at least three to four times since the placement of the [C]hild. Mother is currently treating her drug addiction with a Methadone treatment.

The [orphans' c]ourt finds that during visitation with the [C]hild, [M]other tries to plan crafts to do with the [C]hild and also attempts to engage in meaningful contact with the [C]hild during those visits.

Mother, at the time of this hearing, is currently unemployed although [M]other does receive some benefits through welfare and food stamps.

A Bonding and Attachment Assessment was completed by Miss Carol Patterson with an interview and observation session conducted on March 2nd, 2017, with [M]other and [C]hild. Subsequently, on March 21, 2017, an interview and observation session was conducted between the [C]hild and the foster parents. Finally, on April 20, 2017, an interview and observation session was conducted between natural father and [C]hild.

During each of these interview and observation sessions, an interview with [M]other, natural father and foster parents consisting of one hour was

conducted. Additionally, an observation session of two hours was then conducted with the [C]hild and the adults.

. . . .

Miss Patterson further determined that the [C]hild's ability to form a bond and attachment with [M]other during the first three years of his life was negatively compromised by [M]other's active drug addiction. Miss Patterson believes that the [C]hild possesses a limited bond with [M]other.

Miss Patterson further opined that if reunification is possible, then it would be in the [C]hild's best interests to be reunited with [M]other.

The [orphans' c]ourt finds Miss Patterson's statement or position that because the [C]hild has a strong bond with the foster parents, it would not be harmful if limited -- if the limited bond between the [C]hild and [M]other was terminated to be contradictory.

Notes of testimony, 11/28/17 at 119-128.[3]

[I]t is clear from the testimony and evidence that [M]other has struggled with drug addiction throughout the lifetime of the [C]hild, and it is clear that the [C]hild was removed from [M]other's care as a result of issues that have arisen in connection with [M]other's choice to use illegal drugs.

*Id.* at 132.

The orphans' court then entered an order denying CYS's petition to involuntarily terminate Mother's parental rights to the Child. CYS filed a timely appeal, together with a concise statement of errors complained of on appeal

---

[3] We omitted the orphans' court's findings with respect to Child's natural father, J.A., as they are not relevant to this appeal.

pursuant to Pa.R.A.P. 1925(a)(2)(i). This court docketed that appeal at No. 1900 WDA 2017. The orphans' court filed a Rule 1925(a)(2)(ii) opinion wherein it referred this court to that part of the November 28, 2017 termination hearing transcript that set forth its rationale for denying CYS's termination petition. A previous panel of this court then vacated the termination order and remanded to the orphans' court to determine whether a conflict existed between the Child's legal and best interests which would require appointment of separate legal counsel. *See In re: C.M., a minor*, No. 1900 WDA 2017, unpublished memorandum (Pa.Super filed November 15, 2018). Mother filed a timely petition for allowance of appeal to our supreme court, which it denied on February 14, 2019. This court then remanded and remitted the record to the orphans' court on March 12, 2019.

On August 7, 2019, the orphans' court held the remand hearing. At the hearing, the Child's guardian *ad litem* ("GAL") stated that she interviewed the Child on May 6, 2019, and that he

> was so strong and adamant in saying that he does want to be adopted; and he wished to stay with [his foster parents]; and he refers to them as Mama Bear and Papa Bear; and the reasons why he wanted to stay was his foster brothers and sisters; and that he liked the school that he attended and he didn't wish to change that; and he just wants to be where he is forever. . . .
>
> He did not mention his [M]other. . . .

Notes of testimony, 8/7/19 at 11. Based on the Child's preferred outcome, the GAL confirmed that no conflict exists between the Child's best and legal

- 7 -

interests and concluded that it is, therefore, in the Child's best and legal interests to terminate Mother's parental rights and allow the Child to be adopted by his foster parents. (*Id.*) Nevertheless, the orphans' court entered the order now before us that denied CYS's termination petition.[4] CYS raises the following issues for our review:

> [1.] Whether [CYS] proved by clear and convincing evidence at least one statutory ground for the termination of Mother's parental rights[?]
>
> [2.] Whether the [orphans'] court erred and/or committed an abuse of discretion by considering efforts made by Mother to remedy the conditions which were initiated after the filing of the petition to terminate her parental rights[?]
>
> [3.] Whether the [orphans'] court erred and/or committed an abuse of discretion by failing to find that terminat[ion] of Mother's parental rights would best serve the needs and welfare of the [C]hild[?]

CYS's brief at 4 (full capitalization omitted).

> Our scope and standard of review are settled. Whether the orphans' court grants or denies the petition to involuntarily terminate parental rights, we are limited to determining whether the decision of the [orphans'] court is supported by competent evidence.
>
> > Where the [orphans'] court's findings are supported by competent evidence of

---

[4] We note that CYS filed a timely notice of appeal, together with a concise statement or errors complained of on appeal pursuant to Rule 1925(a)(2)(i). The orphans' court filed a Rule 1925(a)(2)(ii) opinion wherein it "respectfully decline[d] to supplement the record as [it] believes [its] rationale and reasons for the [August 7, 2019 order are] fully and concisely explained in the November 28, 2017 and the August 7, 2019 [h]earing [t]ranscripts[.]" (Orphans' court opinion, 9/17/19 at 2.)

> record, we must affirm the [orphans']
> court even though the record could
> support an opposite result.
>
> . . . .
>
> In a proceeding to involuntarily terminate
> parental rights, the burden of proof is
> upon the party seeking termination to
> establish by clear and convincing evidence
> the existence of grounds for doing so. The
> standard of clear and convincing evidence
> is defined as testimony that is so clear,
> direct, weighty, and convincing as to
> enable the trier of fact to come to a clear
> conviction, without hesitance, of the truth
> of the precise facts in issue.
>
> Moreover, [i]t is clear that in a termination
> proceeding, the focus [initially] is on the conduct of
> the parents.

*In re R.L.T.M.*, 860 A.2d 190, 191-192 (Pa.Super. 2004) (internal quotation marks and citations omitted; some brackets in original).

Here, the orphans' court denied CYS's petition to terminate Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), and (8), which provide:

> **§ 2511.  Grounds for involuntary termination**
>
> **(a)   General rule.--**The rights of a parent in regard
> to a child may be terminated after a petition
> filed on any of the following grounds:
>
> (1)   The parent by conduct continuing
> for a period of at least six months
> immediately preceding the filing
> of the petition either has evidenced a
> settled purpose of relinquishing
> parental claim to a child or has

refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

. . . .

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

. . . .

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal

> or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

23 Pa.C.S.A. § 2311(a)(1), (2), (5), and (8). Having denied the petition under Sections 2511(a)(1), (2), (5), and (8), the orphans' court did not conduct a needs and welfare analysis under Section 2511(b). *See In re B.L.L.*, 787 A.2d 1007, 1014 (Pa.Super. 2001) (stating that child's needs and welfare are discrete considerations determined after applicable statutory termination requirements have been met).

In denying CYS's termination petition under Sections 2511(a)(1), (2), (5), and (8), the orphans' court made the following conclusions of law:

> The evidence indicates that [M]other has not evidenced a settled purpose of relinquishing her parental claims or parental rights to the [C]hild.
>
> The [orphans' c]ourt also finds that although [M]other has struggled with her drug addiction, [M]other has made many attempts to continue to provide parental care to the [C]hild through the form of having visitation with the [C]hild and consistent telephone contact with the [C]hild and also by providing the [C]hild with correspondence and gifts.
>
> The [orphans' c]ourt also finds that although the [C]hild has been removed from [M]other's care for a period in excess of 12 months, that [M]other has consistently attempted to remedy the conditions that have caused the removal; that being, her addiction to drugs.
>
> [M]other has been involved in inpatient rehabilitation at least two times and has attempted to follow through -- follow through – excuse me -- with outpatient counseling after each of the inpatient

- 11 -

> rehabilitation treatments. Unfortunately, [M]other has not been able to successfully stay sober when she is not in an inpatient setting, which has caused her on at least two occasions to be unsuccessfully discharged from the outpatient treatment programs.
>
> Nonetheless, the [orphans' c]ourt finds that [M]other has genuinely tried to deal with her drug addiction; although, unfortunately, not successfully given that [M]other has relapsed at least three to four times in the past two years.
>
> However, I do find that [M]other's attempts to positively deal with her drug addiction have been genuine and that [M]other has made significant efforts to continue to be a parental figure to the [C]hild and be a part of the [C]hild's life.
>
> . . . .
>
> Since the [orphans' c]ourt has found that clear and convincing grounds for involuntary termination do not exist under Section 2511(a), [it] will not conduct an analysis under Section 2511(b).

Notes of testimony, 11/28/18 at 133, 136.[5]

Thereafter, at the August 7, 2019 remand hearing, the orphans' court again denied CYS's termination petition for "the reasons stated on the record for [its] decision on November 28, 2017"; specifically, that "[M]other has not evidenced a settled purpose of relinquishing her parental claims or parental rights to the [C]hild" and even though "the [C]hild has been removed from [M]other's care for a period in excess of 12 months, that [M]other has consistently attempted to remedy the conditions that have caused the

---

[5] We omitted the orphans' court's conclusions of law with respect to Child's natural father, J.A., as they are not relevant to this appeal.

removal; that being, her addiction to drugs." (Notes of testimony, 8/7/19 at 34-36.) Our review of the record compels the conclusion that the orphans' court abused its discretion and erred as a matter of law because competent evidence fails to support its decision to deny the termination petition.

A court may terminate parental rights under Section 2511(a)(1) when the parent demonstrates a settled purpose to relinquish parental claim to a child **or** fails to perform parental duties for at least six months prior to the filing of the termination petition. *In re I.J.*, 972 A.2d 5, 10 (Pa.Super. 2009). "Although the six[-]month period immediately preceding the filing of the petition is most critical to the analysis, the court must consider the whole history of the case and not mechanically apply the statutory six-month statutory provision." *Id.* (citation omitted).

With respect to the history of this case, the record reflects that it was Mother's illegal drug use that caused Child to be removed from her care in October 2015. Following Child's removal, Mother relapsed at least "three to four" times. (Notes of testimony, 11/28/17 at 126.) Mother has also been convicted of drug-related crimes, as well as child endangerment and corruption of minors, which latter convictions directly resulted from her illegal drug use. Six months prior to the filing of the petition to terminate Mother's parental rights, Mother was unsuccessfully discharged from an outpatient treatment program because she failed to follow the attendance policy. Thereafter, and 41 days before the termination petition was filed, Mother

tested positive for cocaine, heroin, and marijuana. The record further reflects that at the time of the November 28, 2017 termination hearing, Mother was on probation for drug-related convictions and was also awaiting sentencing after pleading guilty to a felony drug charge; specifically, possession with intent to deliver heroin. (Notes of testimony, 11/28/17 at 102.) At this juncture, we note that Mother testified that her drug of choice is heroin. (*Id.* at 101.) Mother further testified that although she attended two outpatient treatment programs, the terms of her probation required her attendance. (*Id.* at 103.) Mother further testified her relapses "prove that [she] is not well enough to be a mother and take care of [Child.]" (*Id.* at 98.)

Clearly, Mother's decision to use illegal drugs instead of parent the Child evidenced a settled purpose of relinquishing her parental claim. Additionally, as a result of Mother's drug addiction, she has failed to perform any parental duties. This failure was evidenced for the six months prior to the filing of the petition, continued after the petition was filed, and has been a problem throughout the history of this case. CYS established by clear and convincing evidence that Mother's conduct satisfies Section 2511(a)(1).

Similarly, Mother's illegal drug use has led her to repeated and continued incapacity that has caused the Child to be without essential parental care, control, or subsistence necessary for his physical and mental well-being under Section 2511(a)(2). Although Mother has attempted to become sober, she has consistently relapsed and has never achieved sobriety. Indeed, by

Mother's own admission, her drug addiction has made her incapable of parenting. (Notes of testimony 11/28/17 at 98.) Additionally, the record demonstrates that Mother either cannot or will not remedy her drug addiction. CYS established by clear and convincing evidence that Mother's conduct satisfies Section 2511(a)(2).

The statutory grounds for Sections 2511(a)(5) and (8) require that the Child has been removed from Mother's care for periods of six and twelve months, respectively, and the conditions which led to the removal continue to exist. The Child was removed from Mother's care on October 25, 2015. At the time the termination petition was filed on June 20, 2017, the Child had been removed from Mother's care for twenty months, and Mother had yet to achieve sobriety. We further note that at the time of the termination hearing, the Child had been removed from Mother's care for a period of two years, and Mother still had not attained sobriety. Additionally, at the time of the remand hearing, the Child had been removed from Mother's care for a period of three years and ten months, and Mother still had not become sober. CYS satisfied the statutory grounds to terminate Mother's parental rights pursuant to Sections 2511(a)(5) and (8).

The final consideration is the needs and welfare of the Child pursuant to Section 2511(b), which provides:

> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the

> child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(b).

Here, because the orphans' court denied the termination petition under Sections 2511(a)(1), (2), (5), and (8), it made no findings under Section 2511(b). Therefore, on remand, the orphans' court must consider whether a bond exists between the Child and Mother and whether termination of Mother's parental rights would destroy an existing, necessary, and beneficial relationship. *See In re B., N.M.*, 856 A.2d 847, 859 (Pa.Super. 2004) (citation omitted). When considering Section 2511(b), we instruct the orphans' court to carefully examine the certified record which reflects that Child has lived with his foster family, who wants to adopt him, since Mother's drug abuse resulted in Child's removal from her care in October 2015 and Child's placement in the foster home on November 4, 2015. For more than half of the Child's life, his foster family has taken care of his daily needs. Child has stated his "strong and adamant" preference to be adopted and stay with his foster family "forever." (Notes of testimony, 8/7/19 at 11.) Additionally, psychologist Carol Patterson testified that the Child has a strong bond with his

foster parents and termination of parental rights would not cause him developmental, physical, or emotional harm. (Notes of testimony, 11/28/17 at 26-27, 33.) The CYS caseworker testified that it is in Child's best interest to be adopted. (*Id.* at 65.) The GAL also supports termination of Mother's parental rights so that Child may be adopted by his foster parents. (*See* notes of testimony, 8/7/19 at 11.)

Finally, we remind the orphans' court that our supreme court has stated that, "[c]ommon sense dictates that courts considering termination must also consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents." *In re T.S.M.*, 71 A.3d 251, 268 (Pa. 2013). The court directed that, in weighing the bond considerations pursuant to Section 2511(b), "courts must keep the ticking clock of childhood ever in mind." *Id.* at 269. The *T.S.M.* court observed, "[c]hildren are young for a scant number of years, and we have an obligation to see to their healthy development quickly. When courts fail . . . the result, all too often, is catastrophically maladjusted children." *Id.*

Order vacated. Case remanded for proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>3/10/2020</u>