J-S18001-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF: C.M.H., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: T.M.H., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 174 WDA 2025 |

Appeal from the Decree Entered January 15, 2025
In the Court of Common Pleas of Butler County Orphans' Court at No(s):
4 of 2024

BEFORE:   DUBOW, J., NICHOLS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY DUBOW, J.:                    **FILED: August 12, 2025**

T.M.H. ("Mother") appeals from the January 15, 2025 decree entered in the Butler County Court of Common Pleas that granted the petition filed by T.M. ("Father") and his wife, K.L.E.M. ("Stepmother"), and terminated Mother's parental rights to Mother and Father's thirteen-year-old child, C.M.H. ("Child").  Upon review, we affirm.

The following factual and procedural history is relevant to this appeal. Mother and Father were not in a romantic relationship when Child was born. Mother lied to Father and informed him that another man was Child's biological father.  Father subsequently joined the military and was uninvolved in Mother or Child's life.

---

[*] Former Justice specially assigned to the Superior Court.

After several years, Child began asking questions about her biological father. When Child was ten years old, Mother informed Father that he was Child's biological father, which genetic testing confirmed. Father began visiting with Child on a regular basis.

Approximately eight months later, Butler County Children and Youth Services placed Child with Father due to Mother's poor living conditions and ongoing substance abuse. On November 18, 2022, Father filed an emergency custody complaint, and the court entered an interim order that awarded Father sole legal and primary physical custody of Child and permitted Mother to have supervised visits with Child.

On February 14, 2023, the court entered an order adopting a custody agreement between Mother and Father. The order awarded Mother and Father shared legal custody, Father primary physical custody, and Mother supervised community visits for one to two hours per week.

For the visits, Father would transport Child to meet with Mother in the community, and he would monitor the visit from a distance. Visits often occurred at a highway rest stop where Mother and Child would have a meal together. The visits were inconsistent because Mother would cancel or fail to show up. According to Father, the last visit between Mother and Child occurred on June 20, 2023. Father continued to reach out to Mother in July 2023 to arrange visits and Mother failed to respond.

According to Father, from June 2023 until he filed the termination petition in January 2024, Mother failed to call Child, send letters or gifts to

Child, reach out for holidays, attend school events, and attend doctor visits. Additionally, Mother did not file any motions to enforce her visitation with Child.

Child currently lives with Father, Stepmother, and two younger half-siblings. Father and Stepmother have been married for eight years. Father is a water treatment plant operator and Stepmother is a hotel manager. When Child first came to live with Father and Stepmother, she was malnourished, behind on her well-child visits and vaccinations, and had untreated ringworm. Child currently does not have any health or behavioral concerns. Child attends school regularly, receives good grades, and is involved in Girl Scouts, Brazilian jiu-jitsu, and Aikido. Child received trauma therapy through ABC Pediatrics for six months until the doctor discharged her successfully from treatment. Child is doing well in the home and has a great relationship with Father, Stepmother, and her siblings. Child refers to Stepmother by her first name or "Mom." They have a loving relationship and Stepmother intends to adopt Child if Mother's parental rights are terminated. Mother has two other children, who live with their father. Father and Stepmother facilitate regular contact between Child and those half-siblings.

Father and Stepmother filed a petition to terminate Mother's parental rights on January 24, 2024. The trial court appointed Aimee Burton, Esq., to serve as Child's legal counsel. The trial court held a hearing on October 18, 2024, and December 19, 2024. Father presented testimony from himself; Stepmother; and Eric Bernstein, Psy.D., expert in psychology. Mother

presented testimony from herself, Mother's aunt ("Great Aunt"), and Mother's mother ("Grandmother").

Father and Stepmother testified in accordance with the above-stated facts. The trial court summarized Dr. Bernstein's testimony as follows:

> Dr. Eric Bernstein was appointed to evaluate Child's bond with Mother, Father, and Stepmother. Dr. Bernstein observed that Child associates Father with stability and Mother with anxiety. Dr. Bernstein found that Child has achieved a secure foundation in the care of Father and Stepmother, and developed a sense of safety, stability, and predictability in their environment. Dr. Bernstein observed Mother expressing love to Child and Child reciprocating. The Mother-Child bond "exists" but is in "disrepair." Whereas there is a close and healthy bond between Child and Stepmother, the Child's bond with Mother is "fractured." Dr. Bernstein observed that Child exhibits a psychological need to move forward from her perceived trauma in Mother's care and shows no interest in repairing the relationship. Child expressed to Dr. Bernstein that she supports adoption by Stepmother and would be distressed if the adoption is not accomplished. Dr. Bernstein does not anticipate that Child will experience deleterious effects from terminating Mother's parental rights.

Trial Ct. Op., filed 1/15/25, at 4-5.

Mother testified that she currently lives in a house with a friend. She refuted Father and Stepmother's testimony that she has not seen Child since June 2023. Mother testified that her last visit with Child was in December 2023 at the Emlenton Plaza truck stop, where she met with all of her children to give them Christmas presents. To support her claim, Mother entered into evidence a picture of the December 2023 visit that included a date and time-stamp ("Mother's Exhibit B"). Mother admitted that she had not been visiting with Child since December 2023 and explained that this was because she did

not have a working cell phone because her former paramour smashed it, that she did not know Father's phone number, and Father did not want her to visit. Mother testified that her sober date was May 2023, but that she has experienced a few "slip ups" with her drug of choice, methamphetamine, in the past ninety days and is not sure that she could pass a hair follicle test. N.T. Hearing, 10/18/24, 108-109. Mother testified that she voluntarily went for a drug and alcohol assessment and was advised that she did not need drug and alcohol counseling but, rather, had a "grief problem." *Id.* at 99. Mother testified that she has "severe PTSD, depression, and anxiety." *Id.* at 129. Mother is not receiving any mental health treatment. Mother is unemployed and does not have a driver's license. Mother testified that she has adequate housing and that she wishes to resume a relationship with Child.

Great Aunt and Grandmother both testified regarding Exhibit B, the December 2023 picture. Great Aunt testified that she was not present for the visit and did not take the picture. She further testified that Grandmother took the picture but could not send the picture to Mother's attorney, so Great Aunt took a picture of the picture and sent it to Mother's attorney to submit as an exhibit. Grandmother testified that she was present at the December 2023 visit and confirmed that it was in December 2023.

Stepmother testified on rebuttal. She explained that Mother and Grandmother were mistaken, and that the visit in the picture occurred in December 2022. Stepmother submitted various photos into evidence to support her testimony.

At the conclusion of the hearing, Child's attorney argued that Child wished to be adopted. On January 15, 2025, the trial court terminated Mother's parental rights pursuant to 23 Pa.C.S. §§ 2511(a)(1) and (b).

Mother timely appealed. Both Mother and the trial court complied with Pa.R.A.P. 1925.

Mother raises a sole issue for our review: "Whether the trial court erred in terminating Mother's parental rights in light of the affirmative steps that she took to maintain contact with [C]hild?" Appellant's Br. at 6.

In cases involving the involuntary termination of parental rights, this Court's review is limited to determining whether the trial court's conclusion is supported by competent evidence. *In re Adoption of L.A.K.*, 265 A.3d 580, 591 (Pa. 2021). When we review a trial court's decision to grant or deny a petition to involuntarily terminate parental rights, we must accept the findings of fact and credibility determinations of the trial court if the record supports them. *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." *Id.* (citation omitted). "Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand." *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009) (citation omitted).

We may not reverse merely because the record could support a different result. *T.S.M.*, 71 A.3d at 267. We give great deference to the trial courts

"that often have first-hand observations of the parties spanning multiple hearings." *Id.* Moreover, "[t]he trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004) (citation omitted).

It is axiomatic that "[p]arents enjoy a fundamental right to make decisions regarding the care, custody[,] and control of their children. It cannot be denied that significant and permanent consequences for both the parent and child can follow the termination of parental rights, as there is an undeniable importance in a child's relationship with a biological parent." *L.A.K.*, 265 A.3d at 591 (internal citations omitted). Accordingly, "[i]n recognition of the gravity attendant to the termination of parental rights, the moving party must establish the statutory grounds by clear and convincing evidence; that is, evidence that is so clear, direct, weighty and convincing as to enable a trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *Id.* at 592 (citations and quotation marks omitted).

Section 2511 of the Adoption Act, 23 Pa.C.S. § 2511, governs termination of parental rights, and requires a bifurcated analysis. "Initially, the focus is on the conduct of the parent." *In re Adoption of A.C.*, 162 A.3d 1123, 1128 (Pa. Super. 2017) (citation omitted). As discussed above, "[t]he party seeking termination must prove by clear and convincing evidence that

the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a)." *Id.* (citation omitted). If the court determines that the parent's conduct warrants termination of his or her parental rights, the court then engages in "the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child." *Id.* (citation omitted). Notably, we need only agree with the court's decision as to any one subsection of Section 2511(a), as well as Section 2511(b), to affirm the termination of parental rights. *In re K.Z.S.*, 946 A.2d 753, 758 (Pa. Super. 2008). We concentrate our analysis on subsection 2511(a)(1).

Section 2511(a)(1) provides that the trial court may terminate parental rights if the petitioner establishes that "[t]he parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties." 23 Pa.C.S. § 2511(a)(1). The focus of involuntary termination proceedings is on the conduct of the parent and whether that conduct justifies termination of parental rights. *In re B.L.L.*, 787 A.2d 1007, 1013 (Pa. Super. 2001). Although the statute focuses on an analysis of the six months immediately preceding the filing of the petition, the court must consider the whole history of a given case and may consider a parent's inaction before the six-month statutory provision. *K.Z.S.*, 946 A.2d at 758.

Our Supreme Court has repeatedly defined "parental duties" in general as the affirmative obligation to provide consistently for the physical and emotional needs of a child:

> Parental duties are not defined in the Adoption Act, but our courts long have interpreted parental duties in relation to the needs of a child, such as love, protection, guidance and support. Parental duties are carried out through affirmative actions that develop and maintain the parent-child relationship. The roster of such positive actions undoubtedly includes communication and association. The performance of parental duties requires that a parent exert [herself] to take and maintain a place of importance in the child's life. Fortitude is required, as a parent must act with reasonable firmness to overcome obstacles that stand in the way of preserving a parent-child relationship and may not wait for a more suitable time to perform parental responsibilities.

*L.A.K.*, 265 A.3d at 592 (internal citations and quotation marks omitted).

It is well-settled that "a parent's efforts are always considered in light of existing circumstances." *Id.* (citations and internal quotation marks omitted). "To that end, even where the evidence clearly establishes [that] a parent has failed to perform affirmative parental duties for a period in excess of six months as required by Section 2511(a)(1), the court must examine the individual circumstances and any explanation offered by the parent to determine if that evidence, in light of the totality of circumstances, clearly warrants permitting the involuntary termination of parental rights." *Id.* at 593 (citations and internal quotation marks omitted).

Our Supreme Court has explained:

> Consideration of the totality of the circumstances includes evaluation of the following: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between the parent and child, if any, including any efforts made by the parent

to reestablish contact with the child; and (3) the effect that termination of parental rights would have on the child pursuant to Section 2511(b). . . . It is within this framework that a court determines whether a parent has faced barriers that prevented the parent from maintaining the parent-child relationship. What constitutes a "barrier" in the context of a Section 2511(a)(1) analysis is a finding within the discretion of the trial court, and what may constitute a barrier necessarily will vary with the circumstances of each case.

*Id.* Notably, "a parent's efforts to enforce his or her legal custody rights unquestionably establishes the affirmative performance of a positive parental duty[.]" *Id.* at 594. Finally, "with respect to any petition filed pursuant to subsection (a)(1) . . . the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition." 23 Pa.C.S. § 2511(b).

In her sole issue, Mother avers that the trial court erred when it terminated her parental rights pursuant to Section 2511(a)(1). Mother's Br. at 6. Mother argues that she took affirmative steps to maintain contact with Child, including "attempting to remain sober" and visiting with Child one month prior to the filing of the termination petition. *Id.* at 17. Mother further argues that she faced the barriers of an "unreliable telephone," not knowing Father's telephone number, and her "lack of a driver's license with unreliable transportation." *Id.* Mother's arguments are unavailing.

The trial court credited Father and Stepmother's testimony that Mother had not visited with Child since June 2023, and further found that Mother did not perform any affirmative parental duties in the six months preceding the filing of the termination petition. The trial court opined:

- 10 -

During the six months preceding the Petition, Mother had taken no action that would be considered a parental duty. Mother's last visit with Child occurred on June 20, 2023. Even if the Court had found Mother's testimony to be credible that she visited and provided gifts in December 2023, such actions alone do not meet the definition of parental duties. Child was last in Mother's custody in November 2022. Since that time, Mother and Child only engaged in brief and monitored visits. For at least six months preceding the filing of the Petition, Mother failed to provide for Childs's physical and emotional needs.

Trial Ct. Op. at 7. The trial court considered Mother's explanations regarding her failure to maintain contact with Child, and did not find them to be credible justifications. The trial court further opined:

Mother claims that Father thwarted her attempts to maintain a relationship with Child, and that she stopped trying because she respected Father's wishes. Mother also claims that she had problems obtaining a working telephone and did not know Father's number. Upon consideration of the evidence presented, the Court does not find Mother's explanations to be credible justifications for her failure to maintain a relationship with Child. Father facilitated Child's visits with Mother, and then the visits ceased when Mother failed to maintain contact.

*Id.* at 8. The court further emphasized that Mother failed to motion the court for visitation with Child: "Even if Mother perceived that Father was impeding contact with Child, she failed to take action in the Family Court matter to enforce her entitled visitation. Mother's rights are not preserved by waiting for a more convenient time to perform parental duties. Therefore, the basis for termination under Section 2511(a)(1) has been proven by clear and convincing evidence." *Id.*

Our review of the record supports the trial court's findings. For a period of six months prior to the filing of the termination petition, Mother failed to

- 11 -

visit with Child and most certainly did not provide her with the necessary love, protection, guidance, and support that go hand in hand with performing adequate parental duties. Moreover, Mother admitted to having both drug and alcohol as well as mental health issues and has failed to make any effort to overcome either. The trial court did not find Mother's justifications regarding her lack of efforts to be credible, and we are bound by the trial court's credibility determinations.

The record supports the trial court's findings and we will not reweigh the evidence. Therefore, we find no abuse of discretion in the trial court's termination of Mother's parental rights pursuant to Section 2511(a)(1).[1]

Decree affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

8/12/2025

---

[1] We note that Mother failed to raise a challenge to Section 2511(b) and, therefore, we decline to address it.